**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

GINA TITO,
on behalf of herself and
all others similarly situated,

                    Plaintiff,

v.

RUBIN & ROTHMAN, LLC and
KEITH ROTHMAN, ESQ.

                    Defendants.

12-cv-3464

**Hon. Roslynn R. Mauskopf**

**Hon. Joan Azrack**

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

---

May 21, 2013
New York, New York

Daniel A. Schlanger, Esq.
Elizabeth Shollenberger, Esq.
9 East 40th Street, Suite 1300
New York, New York 10016
Tel: (914) 946-1981, ext. 101
Fax: (914) 946-2930
daniel.schlanger@schlangerlegal.com
elizabeth.shollenberger@schlangerlegal.com

James B. Fishman, Esq.
Fishman & Mallon, LLP
Counsel for Plaintiffs
305 Broadway, Suite 900
New York, NY 10007
Ph: 212-897-5840
Fx: 212-897-5841
jfishman@fmlawoffices.net

*ATTORNEYS FOR PLAINTIFF*

### TABLE OF CONTENTS

I.   NATURE OF THE CASE ................................................................................... 1

   A.   THE FACTS UNDERLYING THE ACTION ............................................. 1

   B.   THE FEDERAL LAW GOVERNING THE CASE: THE FAIR DEBT
COLLECTION PRACTICES ACT ..................................................................... 3

   C.   THE TERMS OF THE SETTLEMENT ..................................................... 5

II.   ARGUMENT .................................................................................................... 6

   A.   THE RULE 23 MOTION SHOULD BE GRANTED FOR PURPOSES OF
NOTIFYING THE CLASS MEMBERS ............................................................. 6

     1.   Rule 23(a) ......................................................................................... 7

     2.   Rule 23(b) ....................................................................................... 17

   B.   THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY
APPROVED ..................................................................................................... 18

     1.   The Complexity, Expense And Likely Duration Of The Litigation ........................... 20

     2.   The Stage Of The Proceedings And The Amount Of Discovery Completed ............. 21

     3.   The Risks Of Establishing Liability And The Risks Of Establishing Damages ........ 21

     4.   The Risks Of Maintaining The Class Action Through The Trial ................................ 22

     5.   The Ability Of The Defendants To Withstand A Greater Judgment; The Range Of
Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery, And The
Range Of Reasonableness Of The Settlement Fund To A Possible Recovery In Light Of All
The Attendant Risks Of Litigation ................................................................................ 22

   C.   THE PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED .......... 23

CONCLUSION ......................................................................................................... 24

## MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Plaintiff, Gina Tito ("Tito") hereby submits this memorandum in support of the motion requesting an Order that the Court (1) certify the proposed class for settlement purposes; (2) preliminarily approving the proposed settlement agreement (attached hereto as Exhibit 1); (3) directing notice to the class and (4) setting dates for opt-outs, objections, and a hearing under the Federal Rule of Civil Procedure 23(c)(2)for the Court's final approval.

Defendants do not join in this Memorandum of Law but Defendants join in the Settlement, jointly move for conditional approval, have stipulated to the attached proposed Preliminary Approval Order (attached hereto as Exhibit 2), Notice of Class Action And Proposed Settlement (attached hereto as Exhibit 3), and Final Order and Judgment (attached hereto as Exhibit 4) , and have agreed, as part of the settlement to "cooperate" in accomplishing conditional approval, and to "support any order approving this Agreement through any appeal, if necessary". See, e.g. Settlement Agreement at ¶F(1).

## I.  NATURE OF THE CASE

### A. THE FACTS UNDERLYING THE ACTION

This case concerns allegations that the Defendants, the collection law firm of  Rubin & Rothman, LLC, and firm principal Keith Rothman violated the Fair Debt Collection Practices Act (FDCPA) and New York's Judiciary Law in the manner in which they litigated consumer collection actions in various state courts on behalf of TD Auto Finance, LLC ("TDAF").  In these actions, the form complaint filed by Rubin & Rothman, LLC in state court collection actions against the class members contained the statement that "[p]laintiff is not required to be licensed by the NYC Dept of Consumer Affairs because it is a passive debt buyer or the original creditor."  Complaint at ¶ 26.

1

Plaintiff alleges that these statements are false and deceptive in that TDAF is neither a passive debt buyer nor the original creditor in the subject transactions. The Complaint further alleges that the statement is false because "passive debt buyers" are, in fact, required to be licensed by the NYC Department of Consumer Affairs. Id. at ¶29-31.

Plaintiff further alleges that the

- "[T]he auto finance loans underlying the lawsuits brought by R&R, have been pooled into securitized trusts and, pursuant to the relevant trust agreements, pass through a complex web of entities, making the chain of title and TD Auto Finance LLC's standing very real concerns" Id. at ¶ 35.

- "[T]D Auto Finance transfers its ownership interest in the retail installment contracts purportedly assigned to it by auto dealers into a trust, and the trust then hires TD Auto Finance to service the loan." Id.at ¶ 36; and

- "[B]y falsely identifying TD Auto Finance as the "original creditor" or as a "passive debt buyer" R&R hides the complex structure of these transactions and thus avoids Courts and consumers from inquiring into a range of issues (assignment, standing, correct identification of the actual creditor vs. the servicer, etc.) that, in litigation involving residential foreclosures, has proved famously vexing for the banking industry." Id. at ¶ 37.

Plaintiff alleges that the above referenced misstatements violated §§ 1692e, 1692e(2)(A), 1692e(3), 1692e(10) and 1692f. Id. at ¶ 57(a).

Plaintiff also alleges that Defendants violated the FDCPA in that the state court complaints filed on behalf of TDAF were "deceptive and misleading in that they were signed by an attorney but were not in fact meaningfully reviewed by an attorney, in violation of §§1692e, 1692e(3), 1692e(5), 1692e(10), and 1692f". Id. at ¶57(b).

The Complaint also alleges that Defendants violated Judiciary Law § 487, because the false statement identified above were set forth in sworn pleadings as a routine and recurring part

2

of Defendant R&R's practice in order to increase its profits, inter alia, by "hiding from the Court and consumers the existence of potentially significant defenses." Id. at ¶ 65.

Plaintiff brought this action on behalf of herself and a proposed class defined as follows:

All persons who have been sued in a consumer collection action commenced in New York State within one year of the filing of the instant class action lawsuit in which R&R represented TD Auto Finance LLC, and filed a complaint containing the false statement that "Plaintiff is not required to be licensed by the NYC Dept of Consumer Affairs because it is a passive debt buyer or the original creditor.

Id. at 41.

The class definition agreed to by the parties pursuant to the Settlement Agreement is substantially identical but brings forward to the date of preliminary approval the temporal scope of the class:

All persons who have been sued in a consumer collection action commenced in New York State from July 12, 2011[1] through and including the date of preliminary approval of the instant proposed settlement, in which R[ubin] & R[othman, LLC] represented TD Auto Finance LLC, and filed a complaint containing the false statement that "Plaintiff is not required to be licensed by the NYC Dept of Consumer Affairs because it is a passive debt buyer or the original creditor."

Defendants have represented that there are 561 class members.

## B. THE FEDERAL LAW GOVERNING THE CASE: THE FAIR DEBT COLLECTION PRACTICES ACT

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Bank v. Pentagroup Financial, LLC.* U.S. Dist. LEXIS 47985, 2009 WL 1606420, at *2 (E.D.N.Y. June 9, 2009) (quoting 15 U.S.C. § 1692(e)). The FDCPA regulates the collection of consumer debts defined as debts incurred

---

[1] *i.e.*, one year prior to the date the instant lawsuit was filed.

3

"primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5); see also

*Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) ("The FDCPA was passed to protect

consumers from deceptive or harassing actions taken by debt collectors."). When evaluating an

FDCPA claim, courts apply the objective "least sophisticated consumer" standard. See *Clomon v.*

*Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) (adopting the objective standard known as the

"least sophisticated consumer" to ensure the FDCPA "protects all consumers, the gullible as well

as the shrewd"); see also *Pifko v. CCB Credit Services, Inc.*, 2010 U.S. Dist. LEXIS 69872, 2010

WL 2771832, at *3 (E.D.N.Y. July 7, 2010); *Ostrander v. Accelerated Receivables*, 2009 U.S.

Dist. LEXIS 27321, 2009 WL 909646, at *5 (W.D.N.Y. Mar. 31, 2009).

Section 1692e of the FDCPA provides that "[a] debt collector may not use any false,

deceptive, or misleading representations or means in connection with the collection of any debt."

15 U.S.C. §§ 1692e.  A single violation of Section 1692e is sufficient to establish civil liability

under the FDCPA. See 15 U.S.C. § 1692k (establishing civil liability for "any debt collector who

fails to comply with any provision of this subchapter"). The Section specifically identifies

conduct by a defendant which violates the statute. See 15 U.S.C. §§ 1692e(1)-(16); see also

*Clomon*, 988 F.2d at 1318 ("The sixteen subsections of § 1962e set forth a non-exhaustive  list of

practices that fall within this ban.").  Such conduct includes, *inter alia*, "[t]he use of any false

representation or deceptive means to collect or attempt to collect any debt or obtain information

concerning a consumer." 15 U.S.C. § 1692e(10); see also *Russell v.  Equifax A.R.S.*, 74 F.3d 30,

35 (2d Cir. 1996) (finding that "deceptiveness" includes ambiguity).

When a plaintiff establishes a violation, he or she may recover statutory damages in an

amount not to exceed $1,000, plus any actual damages sustained. See 15 U.S.C. §§ 1692k(a)(1),

(a)(2)(A). Recovery in FDCPA class actions are limited to $1,000 statutory damages for each

4

named plaintiff, and the lesser of $500,000 or one percent of the net worth of the defendant debt collector for the remainder of the class. See 15 U.S.C. §§ 1692k(a)(1), (a)(2)(B).

## C. THE TERMS OF THE SETTLEMENT

The parties have agreed to, and jointly propose, the following settlement:

1. Defendants will establish the Settlement Fund, totaling $23,333.33.  Out of the Settlement Fund $2500 will be paid to the Class Representative for her role and services in this litigation, $1,000 to be categorized as statutory damages and $1500 to be categorized as compensation for acting as the Class Representative.  The balance of the fund shall be divided and distributed, on a *pro rata* basis, among those Class Members who timely file a Claim Form in the manner set forth in the Notice. Under no circumstances will any (non-named) Class Member receive more than one Settlement Check or more than $1,000.

2. Defendants will, in addition, pay reasonable attorney's fees and costs to be determined by the Court upon application.

3. R&R will pay for the costs of regular mail notice of the class settlement agreement to all class members, as well as all costs of claims administration, more generally. Pursuant to the Settlement Agreement, Plaintiff has designated Garden City Group, Inc. as settlement administrator.

4. The $23, 333.33 referenced above in Paragraphs C(1) shall be paid into Schlanger & Schlanger, LLP's escrow account on or before 5/22/13.

5. The $20,833.33 payment to the non-named class members shall be distributed evenly among those class members who submit a claim form, up to $1,000.00 per class member and, in the event this does not account for the full $20,833.33, the additional funds be distributed the National Consumer Law Center.

6. By participating in the class action, class members will waive any future right to bring action against the defendants herein.  Class Members will also waive all rights to bring an affirmative action against TDAF based on the same facts as alleged herein but will retain all rights in the State Court actions in which TDAF sued them, including the right to raise as defenses any matters, including those based on the same facts as alleged herein.  Specifically, the class notice to class members will, in many cases alert the Class Members to the fact that a default judgment was obtained against them; for other Class Members who are still actively defending their cases in state court, the information in the class notice may assist them in their defense.

## II. ARGUMENT

### A. THE RULE 23 MOTION SHOULD BE GRANTED FOR PURPOSES OF NOTIFYING THE CLASS MEMBERS

Under Federal Rule 23(c)(1) "'the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date.'" *Ayzelman v. Statewide Credit Services Corp.*, 238 F.R.D. 358, 362 (E.D.N.Y. 2006) (quoting *Collier v. Montgomery County Hous. Auth.*, 192 F.R.D. 176, 181 (E.D. Pa. 2000). Indeed, "[c]ertification of a class for settlement purposes only is permissible and appropriate." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-21, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)

Rule 23(a) provides that: [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, (4) the representative parties will fairly and adequately protect the interests of the class.Fed. R. Civ. P. 23(a).  In addition to satisfying Rule 23(a), a plaintiff must satisfy one of three criteria set forth in Rule 23(b). See *Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir. 1994).

Here, Plaintiff Tito seeks certification under Rule 23(b)(3) which provides that certification is appropriate when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

6

1. Rule 23(a)

### a. The Numerosity Requirement Has Been Met

A plaintiff is not obligated to identify the exact number of class plaintiffs. See *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). However, the Second Circuit has previously determined that numerosity is presumed at a figure of 40. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, there are 561 class members. The numerosity requirement has therefore been met.

### b. There Are Common Questions Of Fact Of Law

Commonality is satisfied "if plaintiffs' grievances share a common question of law or fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Put another way, what is needed is a common nucleus of operative facts or an issue that affects all members of the class. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d. Cir. 1987). There need only be a single issue common to all members of the class. Individual circumstances of the class members may differ without precluding class certification. See *Vengurlekar v. Silverline Techs., Ltd.*, 220 F.R.D. 222, 227 (S.D.N.Y. 2003).

Here, the central issue in the case is whether the statements made by Defendants in the form state court collection complaints which the Defendants initiated against class members on behalf of TDAF were false, misleading and deceptive debt collection practices which violated the FDCPA. This common issue is sufficient to satisfy this requirement.

### c. The Plaintiff's Claim Is Typical Of Those Of The Members Of The Class

Typicality is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."

7

*Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying the individual claims." *Id.*

In this case, all the alleged class members' claims arose out of identical or substantially similar language in form complaints filed in state court actions by the Defendants on behalf of TDAF, resulting in the same violations of the FDCPA being implicated for each class member. Thus, the class members' claims are typical of one another.

### d.  Plaintiff And Her Counsel Offer The Class  Adequacy Of Representation

To satisfy this factor, a plaintiff must demonstrate two elements: (1) "there is no conflict of interest between the named plaintiffs and other members of the plaintiff class" and (2) "class counsel is qualified, experienced, and generally able to conduct the litigation." *Marisol. A. v. Giuliani*, 126 F.3d 372, 378 (2d. Cir. 1997) (internal citations and quotations omitted); see also *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29 (2d Cir. 2009) (conceptualizing first prong as whether "plaintiff's interests are antagonistic to the interest of other members of the class").

In this matter, Plaintiff's counsel, James B. Fishman, of the Law Office of Fishman & Mallon, LLP, and Daniel Schlanger, of Schlanger & Schlanger, LLP are each qualified and experienced attorneys, fully familiar with consumer litigation, with the FDCPA and class action litigation under that, and other, consumer protection statutes.

   i.   *James B. Fishman, Esq.*

8

Mr. Fishman is a partner at Fishman & Mallon, LLP in New York City, a law firm specializing in consumer protection and tenants' rights. Mr. Fishman is a 1979 graduate of New York Law School and has served as an Assistant Attorney General in the Bureau of Consumer Frauds and Protection of the New York State Department of Law. He has been representing consumers in all forms of litigation since 1980 and has had a Martindale Hubbell AV rating since 2006. In 2002, he was awarded the Consumer Hero of the Year Award by the National Association of Consumer Advocates. In 2008 he received a Wasserstein Public Interest Fellow at Harvard Law School. He is highly experienced in consumer litigation and has participated in numerous cases similar to the case at bar, including:

- Won first decision permitting consumers to seek injunctive relief for violations of the New York Fair Credit Reporting Act. *White v. First American Registry*, 2005 U.S. Dist. LEXIS 14786 (S.D.N.Y. 2005). Case subsequently resulted in a class-wide settlement on behalf of 40,000 victims of "tenant-blacklisting" which included the first ever right of expungement and $2,000,000.00 in damages, 2007 WL 203926.

- Won certification of a class of applicants for rental housing who were the      subject of tenant screening reports containing illegally obsolete information in violation the Fair Credit Reporting Act. *Massey v. On-Site Manager, Inc.*, EDNY(BMC) *2012 U.S. Dist. LEXIS 120181*. Case subsequently resolved in a nationwide settlement on behalf of thousands of tenants and over $1,000,000 in damages.

- Won the first case establishing that the threat of "tenant-blacklisting" constitutes immediate and irreparable harm necessary to obtain a preliminary injunction barring the commencement of a Housing Court eviction proceeding. *Weisent v. Subaqua Corp.*, 16 Misc. 3d

9

1115A; 2007 N.Y. Misc. LEXIS 5080; 238 N.Y.L.J. 11, 2007 WL 2140947 (Sup. Ct. N.Y. Co. 2007);

Won class action certification and settlement approval in *Thornton & Kolinsky v. Belkin Burden Wenig & Goldman, PC*, 09 CV 5901 (LAK) (DCF) (SDNY) an FDCPA action against a landlord law firm;

• Won first impression decision holding that a tenant is not required to supply a  Social Security number to his or her  landlord and that threat to evict a tenant for failing to do so can be enjoined as a deceptive business practice pursuant to GBL § 349  *Meyerson v. Prime Realty Services, LLC*, 7 Misc. 3d 911, 796 N.Y.S.2d 848, 2005 N.Y. Misc. LEXIS 361 (Sup. Ct. N.Y. Co. 2005);

• Won the first decision holding that the Fair Credit Reporting Act bars landlords from obtain credit reports on their rent stabilized tenants. *Ali v. Vikar Management Ltd.*, 994 F. Supp. 492 (S.D.N.Y. 1998);

• Established the right to pursue injunctive and damage claims as a "private attorney general" against a landlord engaging in deceptive business practices.  Landlord had improperly altered official forms to demand personal information from its tenants. *Martinez v. Classic Realty et al.*, N.Y.L.J. 5/21/03 (Sup. Ct. N.Y. Co.);

• Principal author of successful amicus curiae brief on behalf of the National Association of Consumer Advocates in *Romea et al. v, Heiberger & Assocs.*, 163 F. 3d. 111 (2nd Cir. 1998), upholding the applicability of the Fair Debt Collection Practices Act to residential rent claims by landlords; and

- Principal author of amicus curiae brief on behalf of the National Association of Consumer Advocates, AARP and United States Public Interest Research Group in *Cousin v. Trans Union*, 246 F. 3d. 359 (5th Cir. 2001), involving the availability of standard for recovering, punitive damages under the Fair Credit Reporting Act.

In the last twelve years, Mr. Fishman has participated in the following presentations, publications, activities, and achievements in connection with his advocacy on behalf of consumers:

- Panelist, Tenant Blacklisting, New York State Bar Association, May 2010;

- Selected as a Fellow of the New York Bar Foundation, 2010;

- Presenter, Consumer Law, Louisiana State Bar Association, November, 2009;

Presenter, "Using the FCRA to Protect Tenants," National Association of Consumer Advocates, Conference Organizer, 8th Semi-Annual Conference on Fair Credit Reporting Act, May 2009, Chicago;

- Panelist, "Use of Data, Information & Credit Reports in Housing Court," Association of the Bar of the City of New York, City Bar Center for CLE, January 2009, New York City;

- Panelist, "Consumer Credit Issues Affecting Domestic Violence Victims," National Consumer Law Center Teleconference, March 2008;

- Presenter, "Furnisher Liability," and "Identity Theft Litigation," National Association of Consumer Advocates, Conference Organizer, 6th Annual Conference on Fair Credit Reporting Act, May 2006, Las Vegas;

11

- Presenter, "Legal Perspectives in Identity Theft and Privacy Interests" Symposium 2005, Albany Law Journal of Science & Technology, March 2005, State University of New York Albany Law School, Albany, N.Y.;

- Moderator, "Common Fact Patterns for Litigation with Credit Reporting Agencies" and Presenter, "Depositions: 30(b)(6) Witnesses and the CDV Operators" National Association of Consumer Advocates 4th Annual Conference on Fair Credit Reporting Act: Litigating Accuracy Issues with Credit Reporting Agencies, May 2004, Chicago;

- Trainer, "Consumer and Privacy Issues in Housing Law" Legal Services for New York City Training Program, May, 2004;

- Panel Member, "Addressing the Identity Theft Problem" New York Federal Reserve Bank, February 2004;

- Presenter, "Identity Theft Litigation" National Association of Consumer Advocates and National Consumer Law Center Joint Conference, October 2003, Oakland, CA;

- Presenter, "Credit Scoring and Credit Reporting Issues" Legal Services of New Jersey Training Program May 2003;

- Presenter, "Hot Topics in Consumer Law," Debt Collection Practices and Fair Credit Reporting Act, Legal Services for New York City Training Program, April, 2003 New York, N.Y.;

- Presenter, "ABC's of Credit Reporting Litigation" National Association of Consumer Advocates and National Consumer Law Center Joint Conference, October 2002, Atlanta, GA.

- Panelist, "Consumer Law," Board of Judges of the Civil Court of the City of New York, October 2002, Ellenville, New York.

12

- Moderator, "Fair Credit Reporting Act Roundtable," National Association of Consumer Advocates and National Consumer Law Center Joint Conference, October 2001, Baltimore, MD.

- Presenter, "Expanding a Consumer Law Practice," National Association of Consumer Advocates and National Consumer Law Center Joint Conference, October 2000, Boulder, CO.

- Panelist, Identity Theft Workshop, Federal Trade Commission, October 2000, Washington, D.C.

- Featured Speaker, "Developing and Maintaining a Credit Reporting Abuse Litigation Practice," Virginia Trial Lawyers Association, October 2000, Williamsburg, VA.

- Featured Speaker, "Litigating Cases Under the Fair Credit Reporting Act," State Bar of Michigan, Consumer Law Section, September 2000, Detroit, MI.

      ii.     *Daniel A. Schlanger, Esq.*

Mr. Schlanger is a graduate of Harvard Law School (2004, *cum laude*), and a former clerk to the Hon. R. Lanier Anderson, III, United States Court of Appeals, 11th Circuit).

He is Co-Chair of the Westchester County Bar Association's Pro Bono committee, which deals virtually exclusively with consumer law issues.

He also sits on the New York City Bar's Civil Court Committee, which deals virtually exclusively with consumer law issues. He is a member of the National Association of Consumer Advocates, and sits on that organization's Education Committee.

Mr. Schlanger has published on consumer law issues, including:

- *Assisting the Consumer Debtor: Becoming Aware of Potential Affirmative Claims*, New York State Bar Association, One on One (Quarterly Publication of the General Practice Section), Fall 2009, Vol. 30, No.3.

- *Assisting The Consumer Debtor, Part II: Defenses To Consumer Credit Claims*, New York State Bar Association, One on One (Quarterly Publication of the General Practice Section), Winter 2009, Vol. 30, No.4.

- *Assisting The Consumer Debtor, Part III: Improper Service*, New York State Bar Association, One on One (Quarterly Publication of the General Practice Section), Spring/Summer 2010, Vol. 31, No.2.

He has served as a panelist for a CLE training for volunteer attorneys on consumer protection issues, sponsored by the New York City Bar Association and Fordham Law School's Feerick Center for Social Justice (Spring 2012), and regularly serves as a "consumer law expert" in CLARO clinics for *pro se* litigants in Westchester and Manhattan, where he advises volunteer attorneys assisting consumers with collection defense matters.

Earlier this month, Mr. Schlanger was awarded a New York State Bar Association President's Award for his pro bono work on behalf of consumers.

He has been a speaker on practicing consumer law in the private bar (National Association of Consumer Advocates Webinar, Fall 2012), and recently served as a guest speaker on consumer protection issues at SUNY Buffalo School of Law (Stonybrook/NYC Campus, April 2013).

He has been quoted on consumer law matters in both the New York Times ("*Debts That Won't Die*, July 30, 2010)("*A Warranty She Didn't Want*", May 7, 2011), and the American Bar

14

Association Journal ("*Payback: Lawyers on Both Sides of Collection Are Felling Debt's Sting*, December 1, 2010).

He has litigated extensively in both state and federal court on behalf of consumers with outstanding results, including the following federal actions:

> a. *In re Porsche Cars North America, Inc., Plastic Coolant Tubes Products Liability Litigation,*
> 880 F. Supp. 2d 801 (S.D. Ohio 2012)(pending MDL class action) (member, executive committee)
>
> b. *Coble, et al. v. Cohen & Slamowitz, et al.,*
> 11-civ-01037 (S.D.N.Y. 2011) (pending class action), 2011 U.S. Dist. Lexis 125874 (S.D.N.Y. October 13, 2011)(denying defendants' motion to dismiss)
>
> c. *Madden v. Midland Funding et al.,*
> 11-civ-814 (S.D.N.Y. 2011)(pending class action)
>
> d. *Moy v. Eltman, Eltman & Cooper, PC,*
> 12-civ-02382 (E.D.N.Y. 2012)(pending class action)
>
> e. *Paz v. Rubin & Rothman, LLC & Keith Rothman,*
> 11-civ-9625 (S.D.N.Y. 2011)(pending class action)(motion for preliminary approval pending)
>
> f. *Shepherd v. Law Offices of Cohen & Slamowitz, LLP,*
> 668 F.Supp.2d 579 (S.D.N.Y. 2009); 2010 WL 4922314 (S.D.N.Y., November 29, 2010)(awarding fees)
>
> g. *Hernandez v. Erin Capital Mgmt., LLC,*
> 2011 U.S. Dist. Lexis 114133 (C.D.Ca 2011)(awarding fees)
>
> h. *Diaz v. Portfolio Recovery Assoc., LLC,*
> 2012 U.S. Dist. LEXIS 25802 (E.D.N.Y. Feb. 28, 2012); 2012 U.S. Dist. LEXIS 72724 (E.D.N.Y. May 23, 2012)
>
> i. *Healy v. Enterprise Recovery Systems, LLC,*
> 11-CV-3295 (SDNY 2011)(awarding fees after hearing).
>
> j. *Douyon v. NY Health Medical P.C. et al.,*
> 2011 WL 1740630 (E.D.N.Y. 2011*); 2012 U.S. Dist. LEXIS 141031 (E.D.N.Y. Sept. 28, 2012)*

k. *Robertson v. Capital Management Services, P.C,*
   12 –civ-4860 (S.D.N.Y.)

l.*Simmons v. Collection Bureau Hudson Valley. Inc.,*
   08 civ 6407 (S.D.N.Y. 2008)

m. *Simmons v. Security Credit Systems. Inc.,*
   08 civ 7701 (S.D.N.Y. 2008)

n.*Taronji v. Mel S. Harris & Associates, LLC,*
   08 civ 2126 (E.D.N.Y. 2008)

o. *Blair v. Forster & Garbus,*
   09 civ 2407 (S.D.N.Y. 2009)

p. *Magliocca v. Auto Gallery Imports, et al.,*
   09 civ 0766 (E.D.N.Y. 2009)

q. *Maria Bolaños v. Arrow Financial Services, LLC and Rubin & Rothman,
LLC,*
   10-civ-07243 (S.D.N.Y. 2010)

r. *Dewey v. Midland Credit Management, Inc. et al.,*
   10-civ-7857 (S.D.N.Y. 2010)

s. *Rathburn v. Sharinn & Lipshie, P.C. et al.,*
   10-cv-04449, U.S.D.C., Southern District of Texas

t. *Singleton v. New Century Financial Services, Inc, et al.,*
   10-civ-3982 (E.D.N.Y. 2010)

u. *Darby v. Palisades Collection, LLC and Pressler & Pressler, LLP,*
   11-civ-1673 (E.D.N.Y. 2011)

v. *Dempsey v. Navy Federal Credit Union,*
   11-civ-0166 (E.D.N.Y. 2011)

w. *Hauseman v. Consumer Recovery Associates and ICS & Associates,*
   11-civ-00772 (E.D.N.Y. 2011)

x. *San Antonio & Miguel Jimenez-Veloz v. Northern Auto Traders, LLC, et al.,*
   11-civ-1415 (E.D.N.Y. 2011)

y. *So v. Nemet Motors, LLC, et al.,*
   11-civ-0168 (E.D.N.Y. 2011)

16

     z.  *Trinidad v. David J. Gold, P.C. and David J. Gold, Esq.,*
        11-civ-1744 (E.D.N.Y. 2011)

    aa.  *Webster v. Asset Acceptance, LLC, et al.,*
        11-civ-00670 (S.D.N.Y. 2011)

    bb.  *Molina v. Windels, Marx, Lane & Mittendorf, LLP,*
        11-cv-02995 (S.D.N.Y. 2011)

    cc.*Johnston v. Capital One,*
        11-cv-02269 (S.D.N.Y. 2011).

    dd.  *Mendoza et al v. G & M Foods,*
        08-civ-4498 (S.D.N.Y. 2008)(FLSA wage and hour case)

    ee.  *Cisneros-Calderon et al. v. Salinas Enterprises, LLC,*
        08-civ-6406  (S.D.N.Y. 2008) (FLSA wage and hour case)

These attorneys will adequately represent the class.[2]

Further, there is no antagonism between Plaintiff's claims and those of the proposed class

that would interfere with Plaintiff's ability to act as class representative. The proposed class

members all received  identical or substantially similar pleadings.

    2.  <u>Rule 23(b)</u>

Rule 23(b)(3) is satisfied, as the class settlement is the superior and appropriate method

for the fair and efficient resolution of this matter. With respect to Rule 23(b)(3), the Court's

inquiry is a two-step process. "In order to meet the predominance requirement of rule 23(b)(3), a

plaintiff must establish that the issues in the class action that are subject to generalized proof, and

thus applicable to the class as a whole . . . predominate over those issues that are subject only to

individualized proof." *In re Vias Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir.

2001); see also *Moore v. Paine Webber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (finding

---

[2] Pursuant to the Settlement Agreement at ¶C(4), Plaintiff's counsel's fee petition is to be filed on or before 6/6/13. To avoid duplicate submissions, the declarations of Daniel A. Schlanger, Esq. and James B. Fishman, Esq. setting forth the same qualifications and experiences listed herein has not been submitted with the instant motion, but rather, will be submitted with the upcoming fee petition, only.

predominance met "if resolution of some of the legal or factual questions that qualify each class

member's case as a genuine controversy can be achieved through generalized proof, and if these

particular issues are more substantial than the issues subject only to individualized proof"). If

predominance is found, a Court must also determine whether "a class action is superior to other

available methods for . . . adjudicating a controversy." Fed. R. Civ. P. 23(b)(3).

This case involves allegedly misleading statements contained in form complaints filed in

state court collection actions in which TDAF was the plaintiff. These statements are identical as

to the class members. As such the common issues in the instant case predominate over any

issues that would be subject to individualized proof. Likewise, a class action here appears to be

the superior method for the "fair and efficient adjudication" of a suit potentially involving 561

individuals with identical or virtually identical claims.

Accordingly, the Court should provisionally certify the class herein.

**B. THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED**

Preliminary approval of a proposed settlement is step one of a two-step process before a

class action can be settled. *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102

(S.D.N.Y.1997); *Passafiume v. NRA Group, LLC*, 274 F.R.D. 424, 430-431 (E.D.N.Y. 2010)

A preliminary evaluation into the fairness of the settlement is undertaken prior to notice.

The court should be guided by the Second Circuit's recognition that public policy favors

the settlement of class actions. See *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 328

(S.D.N.Y. 2005)("'There is a 'strong judicial policy in favor of settlements, particularly in the

class action context.' [internal citation omitted] 'The compromise of complex litigation is

encouraged by the courts and favored by public policy.' [internal citation omitted]"), *aff'd in part*

18

*and vacated in part*, 443 F.3d 253 (2d Cir. 2005). As Judge Weinstein has explained, "Class

action suits readily lend themselves to compromise because of the difficulties of proof, the

uncertainties of the outcome, and the typical length of the litigation. There is a strong public

interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group*

*S.p.A. Secs. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (citations omitted).

     In the context of a motion for preliminary approval of a class action settlement, the

standards are not so stringent as those applied when the parties seek final approval. *Bourlas v.*

*Davis Law Assocs.*, 237 F.R.D. 345, 354-355 (E.D.N.Y. 2006)[3]  Therefore, a full fairness

analysis is unnecessary at this stage. *Reade-Alvarez*, 237 F.R.D. at 33. n2.  Preliminary approval

is appropriate where it is the result of serious, informed, non-collusive negotiations, where there

are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly

preferential treatment of class representatives or of segments of the class, or excessive

compensation for attorneys), and where the settlement appears to fall within the range of possible

approval.

---

[3] In deciding whether ultimately to approve a proposed class action settlement, the court must determine whether the compromise is fair, reasonable and adequate. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), cert. denied, 464 U.S. 818, 104 S. Ct. 77 (1983); *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992). The Second Circuit has identified the factors to be considered in determining whether to approve the settlement of a class action: (1) the complexity, expense and likely duration of the litigation; (2) the stage of the proceedings and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the risks of maintaining the class action through the trial; (6) the ability of the defendants to withstand a greater judgment; (7) the range of reasonableness of the settlement fund in light of the best possible recovery; (8) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation; and (9) the response from class members (which will be determined after class notice has been provided). Id., citing Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974). These factors will be applied more fully by the Court after class members have been notified.

The opinion of experienced plaintiffs' class action counsel with substantial experience in consumer litigation as to the desirability of settlement is an important consideration. *In re Domestic Air Transportation Antitrust Litigation*, 148 F.R.D. at 312. "Judges should not substitute their own judgments as to optimal settlement terms for the judgment of the litigants and their counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982); *In re Domestic Air Transportation Antitrust Litigation*, 148 F.R.D. 297, 312 (N.D. Ga. 1993). Indeed, there is a "strong initial presumption" that an arms-length settlement arrived at by counsel experienced in the type of litigation involved on the basis of sufficient information concerning the claims at issue is fair. *Feder v. Harrington*, 58 F.R.D. 171 (S.D.N.Y. 1972). Class counsel has extensive experience in representing consumers, in FDCPA litigation and in class actions generally.

A brief examination of the proposed settlement, using the factors laid out by the Second Circuit for evaluating the substantive fairness of a class action settlement in <u>City of Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 463 (2d Cir. 1974) show that this settlement should be given the Court's preliminary approval.

1. <u>The Complexity, Expense And Likely Duration Of The Litigation</u>

Here, the defendants have denied liability. While the FDCPA is a strict liability statute, and the plaintiffs believe that the misrepresentations complained of are false and misleading and clear violations of the law, it is likely that discovery from at least one non-party witness, TDAF, would be required prior to trial. Additionally, extensive discovery would be necessary to explore TDAF's relationship to the underlying auto finance transactions at issue; the involvement of defendant Keith Rothman in the complained-of activity; and the factual viability of any claim as against Mr. Rothman. The defendants have not agreed to class certification except for purposes of settlement, so motion practice would be necessary. The costs of a jury trial would burden any

recovery obtained for the Class, if plaintiff were ultimately successful, which is by no means

assured. Defendants could well engage in an appeal, further delaying any relief to the Class for

many additional months or years. Settlement will yield a quick and sure benefit to the class.

### 2.   The Stage Of The Proceedings And The Amount Of Discovery Completed

The attorneys for the parties have engaged in informal discovery. The defendants have

identified the number of class members and Defendants have disclosed R&R's certified financial

statements, with regard to its net worth.   Plaintiff's counsel has assured themselves that they

have enough information to assess the fairness of the proposed settlement.   Settling at this stage

will obviate the need for expensive and lengthy formal discovery.

### 3.   The Risks Of Establishing Liability And The Risks Of Establishing Damages

The issue of proving actual damages on a class basis would be extremely challenging,

given the nature of the allegations which do not allege that the alleged misstatements were

detrimentally relied upon by the courts or the class members.  For this reason, the fact that the

settlement does not include an actual damages component reflects a realistic assessment by

Plaintiff's counsel.

In terms of recovery of statutory damages, the settlement constitutes a significant

accomplishment.  Specifically, recovery in FDCPA class actions are limited to $1,000 statutory

damages for each named plaintiff, and the lesser of $500,000 or one percent of the net worth of

the defendant debt collector for the remainder of the class. See 15 U.S.C. §§ 1692k(a)(1),

(a)(2)(B).  Defendants are paying $23,333.33, and R&R's net worth was approximately $2.5

million as of 12/31/10.   Thus, the settlement constitutes 93.3% of the maximum statutory

damage recovery possible as against R&R, *i.e.*, $25,000.   Indeed, Defendants have indicated that

21

R&R's net worth decreased in 2011 through 2013 and that they would seek to establish a lower net worth at trial, raising the possibility that the instant settlement constitutes an amount in excess of 100% of the maximum recoverable statutory damages.

The ability to look to the net worth of Keith Rothman as an individual, *in addition to the net worth of his firm* for purposes of calculating the statutory damage cap under 1692k(a) is unclear as a matter of law. Attorneys for both the Class and the Defendants have researched the issue and found little in the way of clear precedent. Mr. Rothman's individual liability, an issue of first impression, would be hotly contested. In settling this action, Mr. Rothman, while not admitting liability, is agreeing to contribute to the settlement, thus increasing what would be the benefit to the class, if, after trial, it was found that Mr. Rothman's individual net worth could not be used in calculating the statutory damages.

4. The Risks Of Maintaining The Class Action Through The Trial

As described above, the Plaintiff has not yet moved for class certification. Settlement removes any risk that class certification would be denied or that, if granted, such decision could be appealed.

5. The Ability Of The Defendants To Withstand A Greater Judgment; The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery, And The Range Of Reasonableness Of The Settlement Fund To A Possible Recovery In Light Of All The Attendant Risks Of Litigation

As described above, the FDCPA puts a cap on class action damages. The settlement herein obtains for the class 93.3% of the amount that could conceivably be collected against the defendant law firm as statutory damages, and may in fact exceed 100%.

22

The factors listed above all provide strong support for the preliminary approval of this settlement.

## C.  THE PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED

Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *American Med. Ass'n v. United Healthcare Corp.*, 2009 U.S. Dist. LEXIS 45610, 2009 WL 1437819, at *3 (S.D.N.Y. May 19, 2009). Pursuant to Rule 23(c)(2)(B), when a class is certified under Rule 23(b)(3), the Court must direct to the class members "the best notice practicable under the circumstances, including individual notice to all members, who can be identified through reasonable effort." With regard to class certification pursuant to a settlement, the notice "must fairly apprise the prospective members of the class of the pendency of the class action, the terms of the proposed settlement, and the options that are open to them in connection with the proceedings, including the option to withdraw from the settlement." *Reade-Alvarez*, 237 F.R.D. at 34 (citing *Weinberger v. Kendrick*, 698 F.2d 61, 70-71 (2d Cir. 1982)).

The  proposed notice meets the requirements set forth under Rule 23(c)(2)(B). The proposed notice here contains all the necessary information, including the nature of the lawsuit, the class, the settlement terms, and the options available to the members of the class.  In addition, the Settlement Agreement states that the Defendant shall mail, by first class mail, the Class Notice  to each class member at his/her last known address.

## CONCLUSION

For the reasons the proposed class settlement class should be approved and the Court should set the various dates and deadlines for notice, opt-outs, exclusions, objections, and a hearing under Rule 23, as requested herein.

Respectfully

Daniel A. Schlanger, Esq.
Elizabeth Shollenberger, Esq.
Schlanger & Schlanger, LLP
Counsel for Plaintiffs
9 East 40th Street, Suite 1300
New York, NY 10016
Ph: 914-946-1981, ext. 101
Fax: 914-946-2930
daniel.schlanger@schlangerlegal.com

s/James B. Fishman
James B. Fishman, Esq.
Fishman & Mallon, LLP
Counsel for Plaintiffs
305 Broadway
Suite 900
New York, NY 10007
Ph: 212-897-5840
Fax: 212-897-5841
jfishman@fmlawoffices.net

24