UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x        12 CV 03464  (RRM)(JMA)

GINA TITO, on behalf of herself and all
others similarly situated,

                    Plaintiff

          -against-


RUBIN & ROTHMAN, LLC, and
KEITH ROTHMAN, ESQ.,


                    Defendants

------------------------------------------------------x



DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION
FOR ATTORNEYS FEES AND COSTS



                              ROBERT L. ARLEO, ESQ.
                              Attorney for the Defendants
                              380 Lexington Avenue, 17th Fl.
                              New York, New York  10168
                              (212) 551-1115

<u>TABLE OF CONTENTS</u>

Page

<u>PRELIMINARY STATEMENT</u>……………………………………………...   1

<u>ARGUMENT</u>…………………………………………………………………   3

   A.  THE PLAINTIFF'S COUNSELS
       WISH TO BE PAID FOR IMPROPERLY
       FILING TWO CLASS ACTIONS WITH
       <u>VIRTUALLY THE SAME CLAIMS</u>…………………………………..   3

   B.  THE FEES REQUESTED ARE
       BASED UPON ALLEGED WORK
       WHICH WAS REDUNDANT AND
       <u>OTHERWISE UNNECESSARY</u>…………………………………………   11

   C.  THE FEES REQUESTED HEREIN
        <u>SHOULD BE DRASTICALLY REDUCED</u>………………………………   16

   D.  THE FEES SHOULD BE REDUCED
       BASED UPON THE LIMITED MEASURE OF
       <u>SUCCESS OBTAINED BY THE PLAINTIFF</u>…………………………   19

   E.  OTHER FACTORS WARRANTING
       <u>A LARGE FEE REDUCTION</u>……………………………………………   22

   F.  THIS COURT SHOULD FOLLOW
       IT'S PRIOR FEE DETERMINATION
       <u>DECISIONS</u>……………………………………………………………..   25

<u>CONCLUSION</u>………………………………………………………………   25

<u>CITATIONS</u>

*Am. Pipe & Construct. Co.*,
414 U.S. 538, 551 (1974)……………………………………………………………..   6

*Barfield v. N.Y. City Health & Hospital Corp.*,
537 F. 3d 132 (2d Cir. 2008)………………………………………………………   20

*Barile v. Allied Interstate, Inc.*,
2013 U.S. Dist. LEXIS 32483 (S.D.N.Y.)……………………………………………   15

*Boggs v. Alto Trailer Sales, Inc.*,
511 F.2d 114, 118 (5th Cir. 1975)…………………………………………………...   7

*Clarke v. Frank*,
960 F.2d 1146, 1153 (2d Cir. 1992)………………………………………………...   17

*Crown v. Cork & Seal Co. v. Parker*,
462 U.S. 345, 103 Sup. Ct. 2392 (1983)…………………………………………….   6

*DCH Auto Group (USA), Inc. v. Fit You Best Auto, Inc.*,
2006 U.S. Dist. LEXIS 4298 (E.D.N.Y.)……………………………………………   25

*Defilippo v.* Morizio,
759 F.2d 231, 235 (2d Cir. 1985)……………………………………………………   11

*Del Turco v. Taylor Tile Co.*,
2007 U.S. Dist. LEXIS 68358 (E.D.N.Y.)…………………………………………..   25

*E.S. v. Katonah- Lewisboro School Dist.*,
796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011)…………………………………………   24

*Evanauskas v. Strumpf*,
2001 U.S. Dist. LEXIS 14326 (D. Conn.)…………………………………………   10

*Farrar v. Hobby*,
506 U.S. 103, 119, 113 S.Ct. 566 (1992)……………………………………………   19

*Felix v. Northstar Location Services, LLC*,
11-cv-166 (W.D.N.Y.)………………………………………………………………..   21

*Finkel v. Omega Common Servs.*,
543 F. Supp. 2d 156, 165 (E.D.N.Y. 2008)…………………………………………   23

*Foti v. NCO Financial Systems, Inc.*,
2008 U.S. Dist. LEXIS 16511 (S.D.N.Y.)…………………………………………   20

*Gierlinger v. Gleason*,
160 F.3d 858, 876 (2d Cir. 1998)…………………………………………………….. 16

*Gingras v. Lloyd*,
585 F. Supp. 684 (D. Conn. 1983)……………………………………………………. 25

*Goser v. Allied Interstate, LLC*,
2013 U.S. Dist. LEXIS 78097 (S.D.N.Y)……………………………………………. 15

*Guevarra v. Progressive Fin. Serv.*,
497 F. Supp. 2d 1090 (N.D. Ca. 2007)……………………………………………….. 4

*Hecht v. United Collection Bureau*,
691 F.3d 218, 223-24 (2d Cir. 2012)………………………………………………… 20

*Hensley v. Eckerhart*,
461 U.S. 424, 434, 103 S.Ct. 1933 (1983)…………………………………………... 11

*Husain v. Springer*,
2013 U.S. Dist. LEXIS 37134 (E.D.N.Y.)…………………………………………… 24

*Kassim v. City of Schenectady*,
415 F.3d 246, 254 (2d Cir. 2005)…………………………………………………… 19

*Kirsch v. Fleet Street, Ltd.*,
148 F.3d 149, 173 (2d Cir. 1998)…………………………………………………… 16

*Labarbera v. J.E.T. Res. Inc.*,
396 F. Supp. 2d 346, 351 (E.D.N.Y. 2005)…………………………………………… 11

*Labatte-D'Alauro v. GC Serv. Ltd. P'shp*,
168 F.R.D. 451 (E.D.N.Y. 1996)……………………………………………………. 4

*Laster v. Cole*,
2000 U.S. Dist. LEXIS 8672 (E.D.N.Y.)…………………………………………… 12

*Levy v. Donald E. Powell*,
2005 U.S. Dist. LEXIS 42180 (E.D.N.Y.)…………………………………………… 24

*Lunday v. City of Albany*,
42 F.3d 131 (2d Cir. 1994)…………………………………………………………… 12

*Mace v. Van Ru Credit Corp.*,
109 F.3d 338, 341 (7th Cir. 1997)…………………………………………………… 4

*Mautner v. Hirsch*,
831 F. Supp. 1058, 1077 (S.D.N.Y. 1993)……………………………………………...   24

*Murray v. Comm'r of N.Y. Board of Educ.*,
354 F. Supp. 2d 231, 234 (E.D.N.Y. 2005)…………………………………………...   11

*New York State Ass'n for Retarded Children, Inc.. v. Carey*,
771 F.2d 1136 (2d Cir. 1983)………………………………………………………   16

*Pino v. Locascio*,
101 F.3d 235, 237-38 (2d Cir. 1996)………………………………………………   19

*Rappa v. Conn. Gen. Life Ins. Co.*,
2005 U.S. Dist. LEXIS 45911 (E.D.N.Y.)………………………………………....   25

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
369 F. Supp. 2d 353 (E.D.N.Y. 2005)…………………………………………   17

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
2006 U.S. Dist. LEXIS 89226 (E.D.N.Y.)…………………………………………....   18

*Sanders v. Jackson*,
209 F.3d 998 (7th Cir. 2000)………………………………………………………   7

*Separ v. Nassau County Dep't of Social Services*,
327 F. Supp. 2d 187, 190-91 (E.D.N.Y. 2004)…………………………………....   20

*Shannon v. Fireman's Fund Ins. Co.*,
156 F. Supp. 2d 279, 301 (S.D.N.Y. 2000)…………………………………………...   23

*Vishipco Line v. Charles Schwab Co.*,
2003 U.S. Dist. LEXIS 6820 (S.D.N.Y.)…………………………………………...   23

*Wenig v. Messerli & Kramer, P.A.*,
2013 U.S. Dist. LEXIS 39013 (D. Minn.)………………………………………...   6

*Wilner v. OSI*,
201 F.R.D. 3231, 324 (S.D.N.Y. 2001)…………………………………………   13

## STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 23(c)(4)(B) …………………………………………………………   6

Fed. R. Civ. P. 23(c)(1)(C)…………………………………………………………....   6

<u>PRELIMINARY STATEMENT</u>

The herein Memorandum of Law is submitted in opposition to the Plaintiff's motion for attorney's fees and costs (hereinafter "PMAFC".)

First and foremost this lawsuit should never have been commenced and otherwise constitutes an unnecessary waste of judicial resources. Each and every all allegation set forth in the Complaint has been set forth in the Complaint filed in the matter of *de la Paz v. Rubin & Rothman, LLC and Keith Rothman*, 11-cv-9645 (S.D.N.Y.). Solely in the attempt to skirt the FDCPA statutory damages cap, and to churn unwarranted additional attorneys fees, Plaintiff's counsels have improperly turned one class action into two class actions by the simple trick of creating two separate classes based solely upon the particular creditor on whose behalf the Defendants were attempting to collect defaulted auto loans. The Plaintiff in the above-entitled action is actually a member of various sub-classes in the *de la Paz* matter.

Importantly, this Court must remain cognizant that the parties reached a Class Settlement Agreement ("CSA") in the herein action without *any* real litigation. Plaintiff's counsels have not even served the Fed. R. Civ. P. 26 automatic disclosures. Not one interrogatory, not one deposition noticed (no less not one deposition taken), not one request to admit has been served by the Plaintiff. Furthermore, no discovery demands were served by the Defendants so there was no need for the Plaintiff to draft and forward any responses to discovery demands nor was there any need to produce the Plaintiff for a deposition and commit legal time to attending same. There has been only one in-court appearance, i.e. the settlement conference before Magistrate Judge Azrack which occurred on May 2, 2013.

1

This Court should be concerned by the fact that another attorney, James B. Fishman, filed a notice of appearance *after* the parties agreed to settle this action on a class basis. There is absolutely no justification for Mr. Fishman to have filed a notice of appearance and to now seek attorneys fees in the amount of $5,967.50. He brings nothing to the table and, in fact, is a detriment based upon his confrontational conduct at the May 2nd settlement conference in regard to his dealings with the undersigned counsel for the Defendant. The class herein numbers a little over five hundred (500) class members. At most, the Plaintiff's counsels may have to deal with a hand-full of inquiries from class members after notice is sent. Three (3) attorneys from the Plaintiff's primary law firm have submitted billings in regard to Plaintiff's motion for fees and costs. Simply put, this FDCPA action could easily be handled by one attorney. Mr. Fishman's appearance herein is patently improper.

The Plaintiff had very limited success on her claims. The CSA covers only claims for FDCPA statutory damages and also includes a de minimis contribution from the Defendant Keith Rothman and a small payment for a limited release to TD Auto Finance, LLC. There was no declaratory judgment, no actual damages, no treble damages and no injunction as pleaded in the Complaint. Importantly, the claims for violation of New York Judicial Law § 487 ("the 487 claim") have been expressly withdrawn by the Plaintiff as a strict condition of settlement mandated by the Defendants.

2

<u>ARGUMENT</u>

A.  THE PLAINTIFF'S COUNSELS
WISH TO BE PAID FOR IMPROPERLY
FILING TWO CLASS ACTIONS WITH
<u>VIRTUALLY THE SAME CLAIMS</u>

   The Plaintiff's counsels have demonstrated a propensity to abuse the FDCPA in order to

churn attorneys fee. Filing the herein action after clearly understanding that the Plaintiff herein

was a member of one or more subclasses which could have been defined in the *de la Paz  v.*

*Rubin & Rothman, LLC and Keith Rothman*, 11-cv-9625 (S.D.N.Y.) matter demonstrates this

propensity. A copy of the Complaint filed in the *de la Paz* action is attached as Exhibit "A" to

the declaration of Robert L. Arleo submitted herewith. Instead of naming a state-wide class of all

persons who were named as a defendant in lawsuits filed by the Defendant R&R wherein the

complaints contained the identical claims of violation of the FDCPA and § 487, the Plaintiff's

counsels filed two different FDCPA class action lawsuits simply by splitting the class amongst

the specific creditor on whose behalf the Defendant R&R filed lawsuits pursuant to delinquent

automobile loans. The creditor in above-entitled action is TD Auto Finance, LLC and the

creditor in the *de la Paz* action is Capital One Auto Finance (COAF).

   A portion of the website maintained by Schlanger & Schlanger describes the herein lawsuit in

detail. A copy of that portion of the Schlanger & Schlanger website is attached as Exhibit "B" to

the declaration of Robert L. Arleo submitted herewith. A close reading of the Schlanger  &

Schlanger posting indicates that even the Schlangers cannot distinguish the above-entitled action

from the *de la Paz* action. Although the heading of the posting references to lawsuits filed by the

Defendant R&R on behalf of COAF the explanation following immediately thereunder refers to

3

the herein action. Also, the herein action is improperly set forth on the Schlanger & Schlanger website as pending in the "(SDNY)". Following a description of the herein action, the following statement is set forth on the website maintained by Schlanger & Schlanger.  "A very similar case involving Rubin & Rothman's statements in court documents filed on behalf of Capital One Auto Finance, LLC was filed earlier this year and is also pending." Based upon the striking similarities between both cases it is absolutely understandable that Plaintiff's counsels simply cannot divorce one action from the other.

   There was absolutely no reason for the filing of two separate FDCPA class action lawsuits based upon (as described on the Schlanger & Schlanger website) "very similar" claims other than to churn unnecessary attorneys fees and to improperly exploit the FDCPA statutory class recovery provision. The filing of the two class actions, based upon different creditors, is further evidence that the Plaintiff's counsels are using the FDCPA as a vehicle to obtain unwarranted attorneys fees.

    The Defendants acknowledge that there is no requirement to name the broadest class possible in an FDCPA class action. *Mace v. Van Ru Credit Corp*., 109 F.3d 338, 341 (7th Cir. 1997)(rejecting defense argument in FDCPA class action that a national class should be named instead of a state-wide class.); *Labatte-D'Alauro v. GC Services Ltd. Partnership,* 168 F.R.D. 451 (E.D.N.Y. 1996). However, there is nothing in the FDCPA which can be read to encourage the filing of multiple serial class actions, based upon the virtual same alleged FDCPA violations against the same debt collector, by dividing the classes based upon the creditor for whom the debt collector was representing.

   In *Guevarra v. Progressive Fin. Serv.,* 497 F. Supp. 2d 1090 (N.D. Ca. 2007), District Judge

Vaughn R. Walker of the Northern District of California provided an excellent analysis of the potential for abuse of the FDCPA class action provision. The plaintiff in *Guevarra* had originally filed an FDCPA class action lawsuit against a debt collector based upon a class consisting of all consumers who had received the same debt collection letter. However, the plaintiff then amended the complaint to seek relief for herself and a class of recipients of the letter who were indebted to one particular creditor. Plaintiff's counsel advised the court that he had conferred with another plaintiff's counsel on a separate identical action concerning the same letter and agreed with the other attorney to divide the class by creditor.

Judge Walker stated that the attorneys had agreed to divide the class actions by creditor solely to maximum attorneys without any significant benefit to the class. The Plaintiff's attorneys attempted to rely upon the holding in *Mace v. Van Ru Credit Services* regarding the "no requirement to name the broadest possible class." Although recognizing the "no broadest class" concept, Judge Walker nonetheless went on to analyze the problem with the net worth provisions of the FDCPA and found that the class recovery limitations ".....encourages multiplication of proceedings." He further stated that this "..mis-incentive created by the FDCPA" stands in direct conflict with 28 U.S.C. sec. 1927 (prohibiting vexatious multiplication of proceedings.)

The Plaintiff's counsels will attempt to distinguish their conduct from the attorneys in the *Guevarra* action based upon the different timing sequence in the filing of the class actions therein and the class action herein and in the class action in the *de la Paz* matter. However, despite the fact that there is a difference in the timing of the filing of the subject class actions, the rationale of the *Guevarra* holding is directly applicable to the conduct of the Plaintiff's counsels, i.e. the filing of two (2) separate class actions against the same debt collector based upon

5

virtually identical claims.

The Court in *Wenig v. Messerli & Kramer, P.A.*, 2013 U.S. Dist. LEXIS 39013 (D. Minn.) recently expanded the analysis of improperly filing serial class actions for the same FDCPA alleged violations by splitting the cases by creditor. In denying a motion for class certification based upon a smaller class limited by creditor the court therein stated:

> "The limitations on the proposed class makes little sense; it would be as logical to limit the class to Minnesota consumers whose last name starts with "R" or to Minnesota consumers who own cats."

The Court then stated that the debt collector sent 30,000 of the subject letters, containing the exact same alleged FDCPA violation, to consumers in Minnesota who owed debts to various creditors and that the "…most natural class…" would include the entire 30,000 Minnesota residents. In fact, the Plaintiff had originally named that class but thereafter revised the class by creditor. The Court further stated:

> "The reason for (plaintiff's) late "gerrymandering" of the class definition may be found in 15 U.S.C. sec. 1692k(a)(2)(B) which limits class recovery……..
> Thus, if the most natural class was certified- a class of about 30,000 consumers…. (defendant) would pay a total of $30,000 and each consumer would recover only about $1. By turning one natural class into numerous unnatural classes (plaintiff's) attorneys are attempting to evade the damages cap……, force the (defendant) to pay more than the FDCPA envisions, and increase the amount of each consumer's recovery."

In direct similar comparison, the Plaintiff's counsels have filed the herein action and the *de la Paz* action to evade the damages cap, force the herein Defendants to pay more than the FDCPA envisions and increase the amount of each consumer's recovery.

Narrowing of the class contravenes one of the main purposes of class action litigation which is the avoidance of the multiplicity of litigation. *Crown v. Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 Sup. Ct. 2392 (1983). The principal function of a class action lawsuit is to avoid the

6

multiplicity of litigation activity where a class action is found to be "superior to other methods for the fair and efficient adjudication of the controversy." *Am. Pipe & Construct. Co.*, 414 U.S. 538, 551 (1974)(quoting Rule 23(b)(3)). By filing two separate lawsuits based upon virtually the identical clams the Plaintiff's counsels have frustrated the purpose of the FDCPA class action provision and the intent behind Fed. R. Civ. P. 23.

The reason for the FDCPA class recovery cap is easily understood. The FDCPA's net worth mandate is meant to address the problem of penalizing smaller collect agencies too harshly and to sufficiently hold accountable larger collection agencies. Therefore, by making the extent of the class recovery directly proportional to a percentage of a debt collector's net worth, Congress intended that the accountability be meted out in accord with the ability of a debt collector to absorb the penalty of class statutory damages. Thus, the class net worth provision is not meant to be punitive in nature but recognition by Congress that an award of statutory damages in a class action may exceed a company's ability to pay and thereby force it into bankruptcy. *Sanders v. Jackson*, 209 F.3d 998, 1002 (7th Cir. 2000). The primary purpose of a net worth provision is to protect a debt collector against having to liquidate in order to satisfy a class action judgment. *Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114, 118 (5th Cir. 1975)(stating that the identical net worth provision set forth in the Truth In Lending Act was designed to protect business from a catastrophic damages award.)

Nor would the additional claim alleged in the *de la Paz* action defeat class certification if the claims of  Ms. de la Paz and Ms. Tito were included in one class action. The only difference between the Complaint in the herein action and the *de la Paz* action is the claim in the *de la Paz* action regarding the creditor's Affidavit of Merit as set forth in paragraph 30 of the *de la Paz*

7

Complaint (Exhibit "A" to the declaration of Robert L. Arleo submitted herewith.) In determining whether a plaintiff can show that the claims of class members share common questions of law or fact, Fed. R. Civ. P. 23(a)(2) does not require that all questions of law or fact raised be common to all members of the class. The critical inquiry is whether the common questions law at the core of a cause of action alleged are shared by the class members.

   Typicality, as required by Fed. R. Civ. P. 23(a)(3), is satisfied when each class member's claims arises from the same course of events and each class member makes similar legal arguments. A simple review of both Complaints reveals that there are common questions that lay at the core of each action. Furthermore, the claims of each of the members of the classes arise from the same course of events and each Complaint alleges the exact same legal arguments. Thus, both the herein action and the *de la Paz* action could have been consolidated into one class action lawsuit. The herein action would never have been filed if the Plaintiff's attorneys would have simply named a class of all persons within the State of New York who received the alleged defective summons and complaint, and alleged improper affidavit of merit, regardless of which corporate entity provided the financing for the automobile purchases.

   The Plaintiff's counsels will attempt to allege that the herein action and the *de la Paz* action are demonstrably different. This contention is without merit. Initially, the Plaintiff's counsels will claim that Ms. Tito's claims were unknown at the time the *de la Paz* action was filed. This argument lacks merit in that, had the Plaintiff's counsels not divided the classes via creditor, Ms. Tito would simply have been a member of one of the sub classes in  *de la Paz* mandating that the herein action should have never been filed. The sub classes are as follows: 1) a class of all persons against whom the summons and complaint was filed; 2) a class of all

8

persons in subclass 1 who also received the COAF affidavit of merit and; 3) a class of all persons who are members of either subclass 1 or 2 (or both) who also resided within the City of New York at the time the summons and complaint was filed.

Plaintiff's counsels will next argue that the *de la Paz* action is based upon alleged false statements made by the Defendants in both state court complaints and in affidavits of merit filed in the state court action for the purpose of obtaining default judgments and the herein action is based solely upon statements made in the state court complaints. This argument is also without merit. The allegations in *de la Paz* and the allegations in the herein action in regard to the state court complaints are verbatim identical. These allegations of wrongdoing are common to *every* class member against whom a state court complaint was filed. Certain other class members may have also had the COAF affidavit of merit filed against them. The subclasses defined above solve this alleged problem.

The Plaintiff's counsels will next argue that the misstatements concerning the New York City Department of Consumer Affairs (NYCDCA) law in the state court complaints will vary from one case to another depending upon whether or not a consumer (such as the Plaintiff in the herein action) resided in the City of New York. However, this argument is belied by the fact that the Plaintiff in the *de la Paz* matter resided in Westchester County which, as the Court is well aware, is not part of the City of New York. Despite this fact, the Plaintiff's counsels still cited to the NYCDCA law to support claims for violation of the FDCPA in the *de la Paz* matter. Otherwise, the subclasses defined above solve this alleged problem.

Indeed, Fed. R. Civ. P. 23(c)(4)(B) authorizes the dividing of a class into subclasses with each subclass then treated as a separate class. Fed. R. Civ. P. 23(c)(1)(C) states that a class may be

9

defined or redefined at any time so the argument that the Plaintiff herein did not learn of her claims until months after the filing of the *de la Paz* Complaint is without merit. The herein Plaintiff could have been added to the *de la Paz* action with a redefining of the class therein to encompass the subclasses described herein. Furthermore, many of the class members would have been members of each or some of the subclasses defined herein.

Plaintiff's counsels will argue that the only person who would benefit from subclassing would be the Defendants yet, for the reasons set forth herein, this scenario gives respect to Congressional intent in seeking not to bankrupt a debt collector via the FDCPA class action mechanism. This scenario also satisfies the class action mandate that as many similar issues as possible be resolved in one action.

Bringing all claims in one class action would further not affect the statutory monetary recovery limitations set forth in the FDCPA. FDCPA statutory damage maximums are awarded per action, not per FDCPA violation. *Evanauskas v. Strumpf*, 2001 U.S. Dist. LEXIS 14326 (D. Conn.).

Importantly, whether or not this Court agrees with the Defendants' argument that the two cases should have been brought as one cannot change the fact that the Complaint filed in the herein action alleges the same claims *verbatim* as those claims in an FDCPA class action filed months earlier. Also, the work allegedly done in this case is similar to the events which occurred in the *de la Paz* action. These facts directly relate to the frivolous attempt to obtain payment for fourteen hours in regard to cutting and pasting this particular Plaintiff's facts into the Complaint which was already filed in the *de la Paz* action.

B.  THE FEES REQUESTED ARE
    BASED UPON ALLEGED WORK
    WHICH WAS REDUNDANT AND
    OTHERWISE UNNECESSARY

Attorneys must exercise "billing judgment" in regard to fee petitions in that they must act as

they would under the ethical and market restraints that constrain a private sector's attorney's

behavior in billing their own clients. In the private sector "billing judgment" is an important

component in fee setting.  **Hours that are not properly billed to a client also are not properly**

**billed to one's adversary pursuant to statutory authority**. *Defilippo v. Morizio*, 759 F.2d 231,

235 (2d Cir. 1985); *Murray v. Comm'r of N.Y. Board of Educ.*, 354 F. Supp. 2d 231, 234

(E.D.N.Y. 2005). Counsel for a prevailing party should make a good-faith effort to exclude from

a fee request hours that are excessive, redundant or otherwise unnecessary, just as a lawyer in

private practice is obligated ethically to exclude such hours from a fee petition. *Labarbera v.*

*J.E.T. Res. Inc.*, 396 F. Supp. 2d 346, 351 (E.D.N.Y. 2005). Indeed, the United States Supreme

Court has mandated that attorneys submit an honest fee petition when seeking fees. *Hensley v.*

*Eckerhart*, 461 U.S. 424, 434 (1983)(stating "Counsels for a prevailing party should make a

good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise

unnecessary.").

Plaintiff's attorneys failed to exercise "billing judgment" in regard to their instant fee petition.

The fees claimed are patently redundant and unnecessary as they have resulted from the filing of

an improper and unnecessary class action lawsuit. This Court must ask whether the Plaintiff's

counsels acted under the ethical and market restraints that constrain a private sector's attorney's

behavior in billing their own clients. Specifically, if a private client had retained the Plaintiff's

counsels to provide legal services which could have easily been covered by one lawsuit but the Plaintiff's counsels unnecessarily converted the claims into two lawsuits in order to generate additional attorneys fees, then that private client would be absolutely justified in refusing to pay the fees which were allegedly based upon the second unnecessary lawsuit. Thus, as the hours at issue herein could not be billed to a private client, the hours submitted herein are also not properly billable to the Defendants pursuant to the statutory authority for fees and costs which is found in the FDCPA.

   The Plaintiff's counsels failed to make a good-faith effort to exclude from a fee request hours that are redundant or otherwise unnecessary as the Plaintiff herein is simply a member of two of the sub-classes which should have been defined in the *de la Paz* matter. Thus, the Plaintiff's attorneys failed to submit an honest fee petition in regard to the herein action.

   The fee petition is also ripe with issues of attempted double-billing. Representations made in attorney fee petitions are serious matters. Inflated time records are subject to potential serious ramifications. *Lunday v. City of Albany*, 42 F.3d 131 (2d Cir. 1994)(finding that billing records submitted in fee petition were "eyebrow raising." and stating that fee determinations require a "conscientious and detailed inquiry into the validity of the representations that a certain number of hours were useful and were reasonably expended.") In *Laster v. Cole*, 2000 U.S. Dist. LEXIS 8672 (E.D.N.Y.) District Judge John Gleeson of the Eastern District directed an attorney to show cause why he should not be sanctioned for inflating his time records by a mere three (3) hours in an FDCPA matter. In referring to the three hours of inflated billing, District Judge Gleeson stated "In light of this admitted falsification I wonder whether the time estimate for other tasks are not similarly inflated." (footnote 1 therein).

12

District Judge Colleen McMahon of this Court, after considering time sheets submitted in another FDCPA matter, stated (referring to the *Laster* matter) "It does not appear that Mr. Fishbein has learned his lesson. Should plaintiff prevail, counsel would be well-advised to review his time sheets before resubmitting them to the Court." *Wilner v. OSI*, 201 F.R.D. 3231, 324 (S.D.N.Y. 2001).

There exists herein two (2) situations which are similar to the *Laster* matter based upon the time records submitted by the Plaintiffs in regard to their motion for fees and costs. On August 30, 2012 the Defendants filed a letter seeking a pre-motion conference in regard to obtaining permission to file a motion to dismiss the Complaint (Dkt. No. 4.) The Defendants also filed a letter in the *de la Paz* matter seeking a pre-motion conference for the purpose of filing a motion for summary judgment. A copy of Plaintiff's pre-motion opposition letter is attached as Exhibit "C" to the declaration of Robert L. Arleo submitted herewith. Although seeking different relief, each letter was supported by basically the same legal arguments. In the time records submitted by the Plaintiff's counsels in alleged support of the herein motion for fees and costs attorney Peter Lane alleges that, from September 11th through September 13th 2012, he committed almost nine (9) hours in regard to "research and prepare pre-motion opposition  letter" (Dkt. 25-1 page 2 therein). However, in the time records submitted in alleged support of the motion for fees and costs in the *de la Paz* matter, Mr. Lane alleges he committed a total of four (4) hours to the research and drafting of the opposition letter to the Defendants pre-motion letter filed therein. A copy of the herein referenced portion of the *de la Paz* time records are attached as Exhibit "D" to the declaration of Robert L. Arleo submitted herewith. Yet a simply review of both letters indicates that, expect for alleged factual assertions specific to each case, the opposition letters are

13

virtually identical. Thus, it is clear that Mr. Lane has engaged in double-billing in regard to both the herein action and the *de la Paz* action in regard to the two (2) opposition letters. Importantly, there is no indication in the herein time records that the total time Mr. Lane allegedly committed has been split between the two cases (as there is in other sections of the submitted billing records) nor could it have required that total amount of time to research law and draft two letters which are virtually identical and which total three (3) pages in the herein action and four (4) pages in the *de la Paz* action.

   It would be patently improper attempt to double-bill a private client had Mr. Lane submitted his fee opposition letter fee requests to a private client. More importantly, Judge Gleeson has set the bar at three (3) hours for compelling an attorney to appear and show cause based upon an improperly inflated fee petition. This Court should rely upon this precedent and direct attorney Lane to appear and show cause why he should not be sanctioned for a clear attempt to double bill in regard to the fee petition submitted herein. Of course, this Court is forewarned that Plaintiff's counsels will respond to this absolutely proper request with a slew of fierce and insulting personal attacks upon the undersigned counsel. The Plaintiff's counsels will further allege that the attempted double-billing was a "mistake". However, a similar claim of "mistake" was advanced by Mr. Fishman in the *de la Paz* matter in regard to another billing indiscretion. In his time records submitted therein Mr. Fishman set forth numerous references to conversations between Mr. Fishman and Ms. de la Paz which totaled almost four (4) hours in time allegedly committed. These entries were patently unbelievable (in part) based upon the fact that Ms. de la Paz is the primary client of the Schlanger firm. In response to the undersigned counsels request to depose the Plaintiff to determine if she had, in fact, spoke to Mr. Fishman for almost four (4)

14

hours Mr. Fishman alleged that he had actually conversed with Mr. Schlanger, not Ms. de la Paz, but that his assistant had misread his handwritten time records. His attempt to explain the "mistake" calls into serious question as to whether Mr. Fishman actually reviewed his own billing records prior to swearing to the accuracy of same in a filing made with the Court therein.

The numerous references to the Complaint filed in the herein action, wherein a total of approximately fourteen (14) hours of compensation is sought, is also similar to the *Laster* matter. Clearly, Plaintiff's counsels have billed for hours in regard to drafting the Complaint as if the Complaint was drafted from scratch. As evidenced by the *de la Paz* Complaint this contention is simply without merit. This Court should follow the *Laster* precedent and direct all of the Plaintiff's counsels to appear and show cause why each should not be sanctioned for inflating fees in regard to the drafting and filing of the Complaint in the herein action.

Justices in district courts in the Second Circuit can recognize fee churning. *Barile v. Allied Interstate, Inc.*, 2013 U.S. Dist. LEXIS 32483 (S.D.N.Y.)(finding that plaintiff's attorneys rushed to "churn fees" in FDCPA case after receiving an Fed. R. Civ. P. 68 offer of judgment); *Goser v. Allied Interstate, LLC*, 2013 U.S. Dist. LEXIS 78097 (S.D.N.Y)(refusing to award fees in FDCPA case which were excessive and unreasonable after receipt of Rule 68 offer of judgment).

It is clear that Plaintiff's counsels failed to exercise proper "billing judgment" in conjunction with their instant fee petition. This Court must ponder whether these attorneys acted under the ethical and market restraints that constrain a private sector's attorneys' behavior in billing their own clients.  It is unfathomable that the hours for which Plaintiff's counsels seek compensation,

15

based upon the filing of an unnecessary class action lawsuit, could be properly billed to a client. Therefore, these claimed hours cannot be properly billed to the herein Defendants pursuant to the statutory authority for awarding attorneys fees as same is set forth in the FDCPA.

### C.  THE FEES REQUESTED HEREIN SHOULD BE DRASTICALLY REDUCED

A party seeking attorneys fees has the burden of demonstrating the reasonableness and necessity of the hours allegedly committed. A court must use conscientious and detailed inquiry into the validity of representations that a certain number of hours were reasonably and usefully expended. *New York State Ass'n for Retarded Children, Inc.. v. Carey,* 771 F.2d 1136 (2d Cir. 1983). In reviewing fee applications a district court should exclude hours that were not reasonably expended. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933 (1983). If the court determines that any hours are excessive, redundant or otherwise unnecessary, the court should exclude those hours from the fee petition. *Gierlinger v. Gleason,* 160 F.3d 858, 876 (2d Cir. 1998). A court may exclude any unreasonable hours from a fee request by making across-the-board reductions in the amount of hours claimed. *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 173 (2d Cir. 1998).

The Plaintiff and her counsels have the burden of demonstrating the reasonableness and necessity of the hours allegedly committed as set forth in the submitted time records. If this Court uses conscientious and detailed inquiry into the validity of representations by Plaintiff's counsels that a certain number of hours were reasonably and usefully expended then, at an absolute minimum, a drastic reduction in fees should be effected. This Court must exclude the

16

myriad of hours that were not reasonably expended by the Plaintiff's counsels. This Court can easily determine that most of the alleged hours are excessive, redundant and were otherwise unnecessary and, therefore, exclude those hours from the fee petition. This Court should exclude all of the hours from the Plaintiff's fee request which are unreasonable based upon the similarities between the herein action and the *de la Paz* action by making a severe across-the-board reduction in the amount of hours claimed by the Plaintiff's counsels.

A court must use its experience with the practice of law to assess the reasonableness of hours spent on a particular case. *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992). The Defendants are extremely comforted to know that the Magistrate Judge assigned to the above-entitled action has vast experience with the practice of law. The Defendants are confident that, when this vast experience is invoked to assess the reasonableness of the hours allegedly spent on this particular case by the Plaintiffs counsel, the outright unreasonableness of the hours will be crystal clear to the Court and the decision in regard to the fees issue will reflect same.

The Plaintiff's counsels herein seek a total of $43,773.50 in regard to their motion for fees. This Court should compare the fees sought in the herein matter to the $50,000.00 fees obtained by the undersigned counsel in the matter of *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 369 F. Supp. 2d 353 (E.D.N.Y. 2005). The Amended Complaint therein alleged similar claims of no meaningful attorney review in regard to attempts to collect debts. There were 45,000 class members in *Reade-Alvarez* to whom direct mail notice of a similar Fed. R. Civ. P. 23(b)(3) class settlement was provided. During a period from May, 2004 through December 2006 the undersigned committed 131 hours and 55 minutes of attorney time. Fees in the amount of $50,000.00 were paid (pursuant to the settlement agreement). The undersigned counsel's hourly

17

rate was approved at $420.00. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 2006 U.S. Dist. LEXIS 89226 (E.D.N.Y.). The case was contested at the outset with a motion to dismiss the Amended Complaint filed by the Defendants early in the litigation. The motion was fully briefed and an oral argument was held before Judge I. Leo Glasser of this Court. Importantly, the undersigned counsel litigated the case entirely alone. Thus, the use of four (4) attorneys of record by the Plaintiff in the above-entitled action, with a collective practice experience of ninety eight (98) years, is patently unreasonable.

The Plaintiff's counsels will attack the *Reade-Alvarez* class settlement and allege that the class members therein received zero direct financial benefit and that the class members in the herein action will each receive monies. This baseless mantra is trumpeted in support of the filing of micro FDCPA class actions under the guise of obtaining direct monies for consumers. However, the improper splitting of classes defeats Congressional purpose in regard to the cap on statutory damages in FDCPA class actions and the Congressional intent not to bankrupt debt collectors in conjunction with FDCPA class actions.

Further basis to reduce fees is found in the time entries on page three (3) of the billing records submitted herein (Dkt. No. 25-1). Therein Mr. Schlanger alleges he committed almost twelve (12) hours to legal research and drafting a response to Defendant's request for a stay of the herein action. However, his resulting opposition letter (Dkt. No. 12) contains less than four (4) pages of legal argument in regard to the stay. Thus, a claim of almost twelve hours for this task is clearly unreasonable, excessive and would not be proper in a bill sent to a private client.

Mr. Schlanger's requests that this Court award payment for twenty eight (28) hours of prospective fees in this action basing this request (in part) upon the time he alleges will be

needed to draft and file a reply to the herein opposition and to attend the fairness hearing. This

request is absurd. Initially, the Plaintiff has already filed a reply to the opposition to the motion

for attorneys fees in the *de la Paz* matter. Therefore, his arguments and case law are already in

his computer. In regard to potential time attending the fairness hearing. The class herein is so

small that the undersigned can virtually guarantee this Court that there will be zero class

members at the fairness hearing. Mr. Schlanger would not be able to engage in a game of

checkers if his opponent was dependent upon a class member appearing at the fairness hearing.

Although the undersigned has personally witnessed Mr. Schlanger's tendency to blather on and

on in regard to his court appearances, same is not a justification for the outrageous prospective

fee demand he seeks. Thus, the request for payment for twenty eight hours for these tasks,

similar to the fourteen hours alleged to have been committed to the drafting and filing of the

Complaint in the herein action, represents a desperate attempt to obtain fees in regard to a

straight forward, mostly non-litigated mirror FDCPA class action.


   D.  THE FEES SHOULD BE REDUCED
        BASED UPON THE LIMITED MEASURE OF
        <u>SUCCESS OBTAINED BY THE PLAINTIFF</u>


    The most critical factor in a district court's determination of what constitutes reasonable

attorneys fees is the degree of success obtained by the Plaintiff. *Farrar v. Hobby*, 506 U.S. 103,

119, 113 S.Ct. 566 (1992); *Kassim v. City of Schenectady*, 415 F.3d 246, 254 (2d Cir. 2005);

*Pino v. Locascio*, 101 F.3d 235, 237-38 (2d Cir. 1996). The assessment of success is determined

by the quality of relief obtained compared to that which plaintiff sought to achieve as evidenced

by the allegations in her complaint. This comparison promotes the courts central responsibility to make the assessment of that which constitutes a reasonable fee. *Barfield v. N.Y. City Health & Hospital Corp.*, 537 F. 3d 132 (2d Cir. 2008). In determining a proper fee reduction for not succeeding on all claims, the court may attempt to identify and subtract those hours spent litigating unsuccessful claims or it can simply reduce the award to account for the limited success. *Separ v. Nassau County Dep't of Social Services*, 327 F. Supp. 2d 187, 190-91 (E.D.N.Y. 2004).

Perhaps the most valuable relief which the Plaintiff could have obtained would have been a stipulated injunction. Indeed, the vast majority of federal courts have held that injunctive relief is not available under the FDCPA. *Weiss v. Regal Collections,* 385 F.3d 337, 342 (3rd Cir. 2004); *Sparkman v. Zwicker & Associates, P.C.*, 374 F. Supp. 2d 293, 299 (E.D.N.Y. 2005). Thus, compelling a debt collector to agree to an injunction to correct the alleged violative conduct is strong support for an award of attorneys. The Plaintiff sought such an injunction but the Defendants refused to agree to this request.

The value of obtaining stipulated injunctive relief in an FDCPA class settlement agreement, and the support injunctive relief provides for a claim for attorneys fees, was recognized in the matter of *Foti v. NCO Financial Systems, Inc.*, 2008 U.S. Dist. LEXIS 16511 (S.D.N.Y.). Therein District Judge Richard Sullivan stated "The Court finds that the agreed upon amount of fees is reasonable in light of the value of the injunction obtained." 2008 U.S. Dist. LEXIS 16511*20-21. The Second Circuit Court of Appeals has subsequently commented upon the use of "going-forward" injunctive relief in an FDCPA class settlement agreement. *Hecht v. United Collection Bureau*, 691 F.3d 218, 223-24 (2d Cir. 2012) but has otherwise has not stated that

20

injunctive relief is not available under the FDCPA.

In response to the claim that the Plaintiff failed to receive an injunction the Plaintiff's counsel will direct this Court to the recent ruling in the matter of *Felix v. Northstar Location Services, LLC*, 11-cv-166 (W.D.N.Y.) wherein the undersigned counsel served as co-counsel for the Plaintiffs named therein. However, the denial of class certification therein, and the criticism by the Court of the injunction obtained therein, was the result of a mistake in defining the class as same was set forth in the CSA negotiated therein. Had the class been properly defined then the undersigned counsel believes that the CSA therein would have been preliminarily approved. *Ironically*, the herein Plaintiff's counsel committed a very similar mistake in regard to the class settlement documents which they drafted and which were submitted in the *de la Paz* matter. A copy of a correspondence dated June 26, 2013 from Mr. Schlanger, confirming discrepancies in the class settlement documents found by District Judge Edgardo Ramos, is attached as Exhibit "E" to the declaration of Robert L. Arleo submitted herewith. Otherwise, the undersigned counsel has obtained numerous orders of final approval of other FDCPA class action settlements based upon injunctive relief obtained therein. Thus, the forthcoming attack upon injunctive relief which will be advanced by the Plaintiff's counsels in their reply papers should be ignored by this Court.

The Defendants made it perfectly clear to the Plaintiff's counsels that the claims advanced for violation of § 487 are patently without merit and that there would be absolutely no monies contributed to the class settlement agreement in regard to the 487 claim. This fact is evidenced by the inclusion of an express withdrawal of the 487 claim in the CSA for which Plaintiff now seeks fees and costs. Had the CSA not been negotiated then the Defendants intended to fully

21

defend against the 487 claims. Notwithstanding, the Plaintiff's counsels will argue that the Defendants paid to have the 487 claim removed. However, the CSA renders this forthcoming argument to be without merit. The monetary breakdown of the settlement fund is clearly set forth on page 10 therein. The undersigned counsel made it perfectly clear to the Plaintiff's counsels in this case and in the *de la Paz* case that no monies would be paid to withdraw the 487 claim as same could be interpreted as an admission that the Defendants tendered a payoff in order to avoid the potential criminal ramifications associated with a 487 claim.

Importantly, the Plaintiff also failed to obtain the declaratory relief she sought, the actual damages she sought and the treble damages she sought. Thus, the CSA is, and has always been, a straightforward FDCPA statutory damages class settlement agreement with small contributions to settle the individual claim advanced against Keith Rothman and to obtain a limited release for the benefit of TD Auto Finance, LLC.

This Court is directed to the allegations in Plaintiff's Complaint and compare that which Plaintiff alleged and that which Plaintiff ultimately obtained. Although Plaintiff sought statutory damages, actual damages, treble damages, declaratory relief and an injunction, the Plaintiff was able to only obtain statutory relief pursuant to the FDCPA and the incidental relief described heretofore herein. This comparison promotes this Court's central responsibility to make the assessment of that which constitutes a reasonable fee for the Plaintiff's counsels. In determining a proper fee reduction for not succeeding on all claims, this Court should simply reduce the award to account for the extremely limited success achieved by the Plaintiff.

E. OTHER FACTORS WARRANTING
   A LARGE FEE REDUCTION

22

The experience and credentials of an attorney are valuable factors for a court to use to determine if hours committed to a litigation were reasonable. *Finkel v. Omega Common Servs.*, 543 F. Supp. 2d 156, 165 (E.D.N.Y. 2008)(50% reduction upon fees requested finding that many submissions were boilerplate, no novel or particularly difficult issue of law were implicated, many entries lacked sufficient detail, also Plaintiffs routinely worked on ERISA cases which further bolstered the finding that the expenditures were unreasonable.)  Here, the Plaintiff's counsels trumpet their collective vast litigation and legal lecture touring experience. These credentials are valuable factors for this Court to use to determine that the vast majority of the hours alleged to have been committed to this litigation were patently unreasonable. Many of the limited submissions were boilerplate, the herein action simply parrots the *de la Paz* action, there was no novel or particularly difficult is of law implicated, most of the entries on the Plaintiff's counsels billing records lack sufficient detail and the Plaintiff's counsels routinely work on FDCPA and class action cases.

The vagueness of the time records also supports a large across the board fee reduction. The time records submitted are replete with references to "legal research". These entries are too vague for this Court to award the fees requested relevant thereto. *Vishipco Line v. Charles Schwab Co.*, 2003 U.S. Dist. LEXIS 6820 (S.D.N.Y.)(finding that entries such as "legal research" are too vague to allow a court to determine the reasonableness of the time allegedly expended.); *Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 301 (S.D.N.Y. 2000)(finding that time entries such as "legal research", which do not indicate the subject matter of the worked performed, "..do not permit a thorough evaluation.").

Many of the other entries are vague, especially entries concerning internal conversations and

23

alleged conversations with the Plaintiff. *Mautner v. Hirsch*, 831 F. Supp. 1058, 1077 (S.D.N.Y. 1993)(denying to awards fees in regard to vague entries such as "Telephone call to S. Berger.", "Review Macklove files.", "Conference with T. Holzman.".) *Levy v. Donald E. Powell*, 2005 U.S. Dist. LEXIS 42180 (E.D.N.Y.)(applying across the board reduction based (in part) upon entries such as "Review correspondence from client." and "Telephone conference with client."); *Daily v. Societe General*, 915 F. Supp. 1315, 1328 (S.D.N.Y. 1996)(finding entries such as "Telephone call.", "consultation" and "review of documents" were not sufficiently sufficient to enable the court to determine if the hours billed were duplicative or excessive.)

Entries which do not have legal matter specified should not be awarded. *Pressman v. Estate of Steinvorth*, 886 F. Supp. 365, 367-68 (S.D.N.Y. 1995)(denying compensation for entries such as "telephone conversation" "prepare correspondence" or "review of file" where not associated legal matter was specified.)

Experienced counsel should be able to spend less time on work than less experienced counsel. *Husain v. Springer*, 2013 U.S. Dist. LEXIS 37134 (E.D.N.Y.)(reducing fees by stating that counsel spent an inordinate amount of time on the case "…which belied his experience. Also noting that Plaintiff did not receive any of the declaratory, injunctive or punitive relief which she sought.) It is imperative for this Court to combine the experience of the Plaintiff's counsels with the fact that the alleged tasks herein were basically repetitions of the alleged tasks performed by the Plaintiff's counsels in the *de la Paz* matter.

A court should reduce the fee award where the requested fee is excessive because the stated number of hours is greater than that which should have been required for the result produced. *E.S. v. Katonah- Lewisboro School Dist.*, 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011). Hours are

24

not reasonably spent if they are excessive, meaning that too much time is devoted to a particular

matter, or duplicate, which us the same mattes are covered at different time or by more than one

attorney. *Gingras v. Lloyd*, 585 F. Supp. 684 (D. Conn. 1983). The Plaintiff's time records

indicate *fourteen (14) hours* allegedly committed to the drafting and filing the Complaint, almost

*two (2) days* to cut and paste the *de la Paz* Complaint. No more than two (2) hours was required

for one attorney to confirm the herein Complaint using the *de la Paz* Complaint.


   F.   THIS COURT SHOULD FOLLOW
      IT'S PRIOR FEE DETERMINATION
      <u>DECISIONS</u>

    This Court has not hesitated in the past to slash attorneys fees when same are not warranted.

*Finkel v. Omega, supra*; *Del Turco v. Taylor Tile Co.*, 2007 U.S. Dist. LEXIS 68358 (E.D.N.Y.);

*DCH Auto Group (USA), Inc. v. Fit You Best Auto, Inc.*, 2006 U.S. Dist. LEXIS 4298

(E.D.N.Y.); *Rappa v. Conn. Gen. Life Ins. Co.*, 2005 U.S. Dist. LEXIS 45911 (E.D.N.Y.).


<u>CONCLUSION</u>

    For the reasons set forth heretofore the Court should invoke an across-the-board seventy (70)

per cent reduction in the fees requested by the Schlanger firm and completely deny any fees to

attorney James Fishman.

DATED: New York, New York
       June 28, 2013

                              Respectfully submitted,
                              / s /  *Robert L. Arleo*
                              ROBERT L. ARLEO, ESQ.
                              Attorney for the Defendants
                              380 Lexington Avenue
                              17th Floor
                              New York, New York 10168
                              (212) 551-1115