UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

GINA TITO,
on behalf of herself and
all others similarly situated,

Plaintiff,

v.

RUBIN & ROTHMAN, LLC and
KEITH ROTHMAN, ESQ.

Defendants.

12-cv-3464

Hon. Joan Azrack

---

### REPLY MEMORANDUM OF LAW
### IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR
### ATTORNEY'S FEES AND COSTS

---

July 23, 2013
New York, New York

Daniel A. Schlanger, Esq.
Schlanger & Schlanger, LLP
9 East 40th Street, Suite 1300
New York, New York 10016
T: (914) 946-1981, ext. 101
F: (914) 946-2930
daniel.schlanger@schlangerlegal.com

James B. Fishman, Esq.
Fishman & Mallon, LLP
305 Broadway, Suite 900
New York, NY 10007
T: 212-897-5840
F: 212-897-5841
jfishman@fmlawoffices.net

*ATTORNEYS FOR PLAINTIFF*

# TABLE OF CONTENTS

I.   DEFENDANTS' ATTACK ON THE FILING OF THIS CASE AS A SEPARATE ACTION FAILS ON THE FACTS AND THE LAW.................................................................. 1

    A.   Defendants Have Confused Opposing Plaintiff's Fee Petition With Opposing Class Certification............................................................................................................ 2

    B.   Important Factual Differences Between Paz and Tito Warranted Filing Each Separately.. 3

    C.   The Cases Cited By Defendants Are Inapposite................................................... 4

II.  THE NUMBER OF HOURS SPENT ON THIS LITIGATION BY PLAINTIFF'S COUNSEL IS REASONABLE.................................................................................. 7

III. PLAINTIFF WAS SUCCESSFUL............................................................................. 11

IV.  PLAINTIFF'S COUNSEL'S BILLING RECORDS ARE NOT OVERLY VAGUE 14

CONCLUSION ................................................................................................................ 15

Plaintiff, by and through counsel, submits this reply memorandum of law in further support of her motion for an award of reasonable attorneys' fees and costs, pursuant to the Class Action Settlement Agreement between the parties[1], and 15 U.S.C. 1692k.

## I. DEFENDANTS' ATTACK ON THE FILING OF THIS CASE AS A SEPARATE ACTION FAILS ON THE FACTS AND THE LAW

Defendants spend over half of their opposition arguing that the instant lawsuit is improper. Opp. pp. 1-12. Specifically, Defendants argue that Plaintiff's counsel, upon becoming aware of Ms. Tito's claims, should have amended another previously filed class action pending in the S.D.N.Y., Paz v. Rubin & Rothman, LLC, et al, – a case involving similar allegations with regard to Rubin & Rothman's litigation on behalf of a different creditor, Capital One Auto Finance, LLC – to broaden Paz's class definition such that it would encompass the claims of the 561 consumers in the Tito class.

Defendants "acknowledge that there is no requirement to name the broadest class possible in an FDCPA class action" Opp. at 4. Moreover, it is undisputed that at the time Plaintiff's counsel commenced Paz, Ms. Tito had not yet been sued in state court.[2] Opp. at 10. Indeed, at the time Ms. Tito retained counsel and filed her state court Order to Show Cause, in early May, 20012, Paz had already settled in principle. Exhibit 1.[3]

Defendants also concede that amendment of Paz to include the Tito class would benefit only Defendants. Opp. at 10. Specifically, by amending Paz to include the Tito class, the class would have had less relief available to it, as a whole, as a result of the FDCPA's class action

---

[1] Filed on 5/21/13 as Exhibit 1 to Plaintiff's Memorandum of Law in Support of Joint Motion for Preliminary Approval of Class Action (ECF # 21), at ¶ (C)(4).
[2] Paz was commenced on December 28, 2011. The state court summons and complaint against Ms. Tito were not filed until 1/3/12 and were not alleged to have been served until January 11, 2012. Exhibit 2. Ms. Tito did not learn of the default judgment taken against her until months later. Complaint at ¶ 23.
[3] Unless otherwise indicated, all exhibits referenced herein are attached to the accompanying Declaration of Daniel A. Schlanger, Esq. dated July 23, 2013

1 | Page

statutory damages cap (1% of Defendants' net worth or $500,000, whichever is less), which is applied on a per case basis. 15 USC § 1692k(a)(2)(B); Opp. at 10.

Nonetheless, Defendants maintain that Plaintiff's counsel should be punished with an award of no or "severely reduced" attorney's fees for failing to amend the Paz case for Defendant's benefit (and to the detriment of the class members in both cases) in order to "give respect to Congressional intent". Id. Defendants' argument fails.

### A. Defendants Have Confused Opposing Plaintiff's Fee Petition With Opposing Class Certification

Defendants have already agreed to settle this case on a stand-alone, class-wide basis. In doing so, Defendants have stipulated and asked the Court to find that "all requirements for class certification under Federal Rule 23(b)(3) have been met in this case." Proposed Preliminary Order, filed jointly by the parties, ECF # 21-2 at ¶2; Joint Notice of Motion To Approve Class Settlement, ECF # 20 at ¶ 1.

As such, the first half of Defendants' opposition, which is, in essence, an opposition to class certification, is inconsistent with the posture of this case, and raises arguments that Defendants – by virtue of agreeing to settle and jointly requesting class certification.

Indeed, although, as discussed below, the cases cited by Defendants on this point are readily distinguishable, it is worth noting at this juncture that they are all related to motions to certify a class. See, Geuvarra v. Progressive Fin. Serv., 497 F. Supp. 2d 1090 (N.D. Ca. 2007); Weinig v. Messerli & Kramer, P.A., 2013 U.S. Dist. Lexis 39013 (D. Minn 2013), discussed *infra*. The supposition that a Defendant may settle a case, advocate for class approval in filings submitted to the Court, and then argue against any compensation to Plaintiff's counsel on grounds that the case was not properly certifiable finds no support in the caselaw.

### B. Important Factual Differences Between Paz and Tito Warranted Filing Each Separately

Defendants' repeated assertion that there are no underlying factual differences between the class in Paz and the class in the case at bar that would justify bringing the claims separately, is simply incorrect.

First, the crux of each case is that the creditor – Capital One in Paz, and TD Auto Finance in Tito – misrepresented its relationship to the underlying debt during the state court litigation, *i.e.*, that the creditor was, in fact, not an "original creditor" or a "passive debt buyer". Proving this assertion with regard to one creditor would have no impact on the validity of the assertion with regard to the other. Indeed, as documented in Plaintiff's counsel's time sheets -- this issue needed to be and was researched separately with regard to each case, with Plaintiff's counsel investing considerable time and resources into making sure that the TD Auto loans at issue here were securitized, such that TD Auto Finance was merely a former assignee and current servicer at the time it represented itself as "original creditor or passive debt buyer" in the underlying state court cases.[4]

Notably, Defendants claimed during the litigation that facts specific to TD Auto Finance were significant to their defense. For example, opposing counsel claimed in an email to plaintiff's counsel dated 3/15/13 that the TD Auto Finance loans posed "no securitization issues as the loans were made directly by TD Bank". Exhibit 3. Opposing counsel's email, although without merit, points precisely to the factual independence of the claims made in each lawsuit.

---

[4] For example, the pre-filing time entries of the undersigned include, *inter alia*, the following:
6/8/12 "2.00 hours, research re securitization of chrysler financial Retail Instalment Contracts including [details redacted]; tel conf with expert kevin byers, and email to kevin re same."
7/1/12, ".4 hours, continued factual research re securitization";
7/6/12 ".3 hours, brief review of byers research";
7/10/12 "1.4 hours, review securitization documents, tel conf with byers re securitization documents, theory of case, etc."
Kevin Byers, C.P.A., is a forensic accountant specializing in examination of securitized loan pools.

Second, Tito was commenced seven-plus months after Paz, and thus the defined class in Tito covers a different time period than the period covered in Paz.

Third, the Paz action deals with false statements made by the Defendants in both the state court complaints and in the affidavits of merit filed in state court actions to obtain default judgments, while Tito is based solely on statements made in state court complaints. In this sense, Paz was a stronger case, and would have been weakened by inclusion of the Tito claims.

Fourth, whereas Ms. Paz resides in Westchester, Ms. Tito resides in New York City, making the relative significance of misstatements related to regulations imposed by the New York City Department of Consumer Affairs vary from one case to another. Indeed, in Paz, Defendants argued that the fact that the named Plaintiff lived in Westchester stripped her of standing and rendered the statement found in the state court complaints false but immaterial. Exhibit 4. In this sense, the instant case is stronger than Paz, and would have been weakened by joining the two.

### C. The Cases Cited By Defendants Are Inapposite

It is well established that "the plain meaning of the FDCPA does not require that the largest potential class be certified" and numerous courts have refused to deny certification on grounds that a broader class would avoid serial litigation against the same Defendant. Labbate-D'Alauro v. GC Servs. Ltd. Pshp., 168 F.R.D. 451, 455 (E.D.N.Y. 1996); Mailloux v. Arrow Fin. Servs., 204 F.R.D. 38, 43 (E.D.N.Y. 2001); Mace v. Van Ru Credit Corp., 109 F.3d 338, 341, 344 (7th Cir. 1997). Moreover, "defendant's desire to limit its exposure in damages cannot be a criteria for assessing the appropriateness of a class action. Rather, the Court must keep in mind the 'private attorney general' enforcement mechanism chosen by Congress in enacting the FDCPA." Macarz v. Transworld Sys., 193 F.R.D. 46, 55-57 (D. Conn. 2000)

Defendants claim to "acknowledge that there is no requirement to name the broadest class possible in an FDCPA class action" (Opp at 4) but nonetheless contend that Plaintiff's counsel should receive no or "severely reduced" compensation in the instant case precisely because Defendants believe that a broader class is potentially certifiable. See, e.g. Id. at 9-10.

In so arguing Defendants rely upon two cases, both of which are distinguishable. In Guevarra v. Progressive Fin. Servs., 2006 U.S. Dist. LEXIS 89193 (N.D. Cal. Nov. 30, 2006)(Guevarra I), a class initially was defined to cover all dunning letters sent by a collector containing the statement "[u]nless [plaintiff] notifies [defendant] in writing within 30 days after receiving this notice that [plaintiff] dispute[s] the validity of this debt or any portion thereof, this office will assume this debt is valid."[5] Sometime later, Plaintiff amended the class to limit the class to letters containing the above referenced sent on behalf of only one of several creditors.

When questioned by the Court as to the reason for the amendment, "counsel for plaintiff admitted to coordinating with plaintiff's counsel in a separate action pending in the Central District of California concerning the same letter as the one at issue here. . . .Apparently, plaintiff's counsel agreed with counsel in the [other] matter to divide up the class between IKEA and non-IKEA creditors.. Id. at *7-8.

The Court, noting that both the original Guevarra class and the original class definition in the other case covered all creditors, labeled the agreement between counsel for the two classes to each amend their class definitions to exclude the other "post-suit collusion between counsel in separate actions in order to cut a class in two" and denied class certification of the amended class. Guevarra v. Progressive Fin. Servs., 497 F. Supp. 2d 1090, 1091-1093 (N.D. Cal. 2007)(Guevarra II).

---

[5] Neither Guevarra I nor Guevarra II specifies why this statement was allegedly violative of the FDCPA, but numerous cases have held that the requirement that the dispute be made "in writing", a restriction not found in the text of the statute, violates the FDCPA. Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 130 S. Ct. 1605, 1609-10, 176 L. Ed. 2d 519 (2010)(collecting cases and noting split in authority).

The second case cited by Defendants, <u>Wenig v. Messerli & Kramer, P.A.</u>, 2013 U.S. Dist. Lexis 39013 (D. Minn. 2013) presents similar facts. In <u>Wenig</u>, plaintiff complained about three different violations related to the wording of disclosures sent in dunning letters. As in <u>Guevarra</u>, the violations did not hinge on the relationship of a particular creditor to the underlying debt. For example, one disclosure failed to inform the consumer that her right to demand verification of the debt expired after 30 days. <u>Id.</u> at *5.

And as in <u>Guevarra</u>, the plaintiff in <u>Wenig</u> started off with a much broader class definition, encompassing all letters containing the violative language, state-wide, only to subsequently attempt to narrow the class to cover letters sent on behalf of only one creditor and to consumers in one county. The Court rejected this "late gerrymandering", noting that there was no rational basis for these limitations given the nature of the violations. <u>Wenig</u> at *15-17.

<u>Guevarra</u> and <u>Wenig</u> have nothing to do with the instant case. First, there can be no allegation in the instant case of "post-suit collusion" or "late gerrymandering." Neither the class definition of <u>Paz</u> nor the class definition here materially changed from filing to settlement.

Moreover, whereas the allegations in <u>Guevarra</u> and <u>Wenig</u> were not factually dependent on the identity of the creditor and the relationship of the creditor to the debt (*i.e.*, the dunning notices at issue in <u>Guevarra</u> and <u>Wenig</u> would be equally violative of the FDCPA regardless of on whose behalf it was sent), the validity of the allegations in the case at bar depend entirely on the relationship of the particular creditor to the debt. That is, to the extent Defendants issued complaints and filed affidavits of merit on behalf of plaintiffs who were original creditors or passive debt buyers, the statement that the state court plaintiff is "a passive debt buyer or the original creditor" would be true, and would not violate the FDCPA. Thus, whereas any class definition based on the identity of the creditor would have been "arbitrary" in <u>Guevarra</u> and <u>Wenig</u>, it was logical and appropriate in the case at bar.

## II. THE NUMBER OF HOURS SPENT ON THIS LITIGATION BY PLAINTIFF'S COUNSEL IS REASONABLE[6]

Defendant accuses Plaintiff's counsel of double billing. The crux of this accusation is as follows: Defendants filed a pre-motion letter to dismiss the instant action. At roughly the same time, Defendants filed a pre-motion letter for summary judgment in Paz. Of the four supposed grounds for "summary judgment" in Paz, three were also supposed grounds for dismissal in Tito. Plaintiff filed pre-motion opposition letters in both cases. Because the arguments raised in Defendants' two letters overlapped, the responses also overlapped in terms of arguments addressed, authorities cited, etc.

Pointing to the similarity between the two letter opposition briefs, Defendants claim that "it is clear" that attorney Peter Lane of Schlanger & Schlanger, LLP "double billed" by listing his time preparing the Paz opposition in the Tito fee petition, and vice versa. Opp. at 13. Defendants even request, in their memorandum of law that this court order Mr. Lane "to appear and show cause why he should not be sanctioned for a clear attempt to double bill in regard to the fee petition submitted herein." Opp. at 14.

Defendants' accusations are baseless. As a preliminary matter, the time records reflect that Mr. Lane spent 4.9 hours with regard to the Tito pre-motion letter (Exhibit 1 to Schlanger Decl. dated 6/6/ 2013, ECF # 25-1, hereafter ("ECF # 25-1"), not 9 hours as claimed in Defendants' opposition. Opp. at 13. In Paz, Mr. Lane submitted a total of 7.4 hours with regard to the Paz pre-motion letter. Exhibit 5.

Thus, Mr. Lane spent a total of 12.3 hours reviewing the two pre-motion opposition letters, and researching and drafting responses to same. These hours reflect the actual amount of time spent on each motion. Where Mr. Lane spent blocks of time doing researching and drafting that

---

[6] Defendants do not dispute the reasonableness of Plaintiff's counsel's hourly rates. Because the reasonableness of the rates is not in dispute, this issue is not addressed on reply.

was common to both letters, he split the time evenly between the two cases. Declaration of Peter T. Lane, Esq. dated 7/23/13, submitted contemporaneously, at ¶¶ 14-15. There is nothing remotely improper about this.[7]

The undersigned contributed an additional 5.4 hours to the two letter oppositions, bringing the total to 17.8 hours to prepare both. These totals are unremarkable. Specifically, if one combines the two letters, deletes portions that are substantively similar, and put the text into memorandum format (*i.e.*, double spaced with one-inch margins), the text runs to 8 pages long. Thus, Plaintiff's counsel spent a total of 2.23 hours per page of legal briefing. This is well within the range found reasonable by Courts. Maldonado v. Houstoun, 256 F.3d 181 (3d Cir. 2001)(approving 120 hrs to prepare a 41 page brief); Reph v. Astrue, 2013 U.S. Dist. LEXIS 12302 (E.D. Pa. 2013) ("courts in this Circuit have found roughly two to three hours per page to be reasonable"); United States ex rel. Berglund v. Boeing Co., 2012 U.S. Dist. LEXIS 73552 (D. Or. May 24, 2012)(4.5 hrs per page); Gaines v. Douglas County Sch. Dist., 2009 U.S. Dist. LEXIS 82112 (D. Nev. Aug. 24, 2009)(4.5 hrs per page); Taucher v. Rainer, 292 F. Supp. 2d 111 (D.D.C. 2003)(3.3 hrs per page); Walton v. Massanari, 177 F. Supp. 2d 359, 364-65 (E.D. Pa. 2001)(2-3 hrs per page reasonable).

Defendants' next claim that the undersigned spent "almost twelve hours" in researching and drafting opposition to Defendant's motion to stay the instant case. The 11.3 hours the undersigned spent on this task was entirely reasonable. Defendants' motion for a stay argued that the case at bar was moot as result of developments in another case against Defendants titled Corpac v. Rubin & Rothman, LLC. The opposition included citation to extensive caselaw, and

---

[7] In Laster v. Cole, 2000 U.S. Dist. LEXIS 8672 (E.D.N.Y. 2000), relied upon by Defendants, an attorney "admitted that he worked on the motion for only six hours, and that he added three additional hours to reflect the amount of time he would have spent if he had drafted the motion from scratch." Id. at *4. The facts in Laster thus have no relation to the facts in the case at bar. It is also worth noting that Defendants attempt to force an order to show cause by means of comments made in an opposition brief is procedurally improper.

reflected a thorough review of the Corpac docket and the Court decisions in that case from which Mr. Arleo was disqualified as counsel, See Corpac, 2013 U.S. Dist. LEXIS 9803, *2 (E.D.N.Y. Jan. 24, 2013). The opposition brief ran to 4.5 pages single-spaced in letter form and, in memorandum form (double spaced, 1-inch margins) runs to 7 pages. Thus, the time submitted comes to 1.61 hours per page of legal briefing. Again this is well within (and in fact, well below) the per page rate courts have routinely found reasonable. The time is particularly reasonable in light of the impact of the work: Upon receipt of the opposition, Defendants promptly withdraw their motion.

Defendants also claim that Plaintiff's counsel seeks 14.4 hours in connection with "drafting" the Complaint and that this is unreasonable in light of the similarities between the Paz complaint and the complaint filed herein. Examination of the actual time entries submitted reveal, however, that the vast majority of the time about which Defendants complain was spent researching factual and legal issues specific to the instant litigation.

For example, the undersigned spent 6.9 hours (prior to filing) researching the securitization of the underlying auto loans, including identifying and obtaining the relevant trust/pooling and servicing agreements, and conferring with a securitization expert regarding same. ECF # 25-1; See, e.g. D. Schlanger entries for *6/8/12*; *7/1/12*, 7/6/12; 7/10/12. Additional time entries reference additional research regarding, for example, the number of cases filed by Defendants on behalf of TD Auto Finance statewide during the relevant period, in order to establish numerosity of the class (e.g. P. Lane entry for 5/22/12) and regarding NYCRR 20-389's licensing requirements (e.g. D. Schlanger entry for 7/10/12).

In short, Defendants' claim that Plaintiff seeks 14 hours to "cut and paste the de la Paz Complaint" is disproved by the actual time entries, which indicate that – just as this Court should encourage – Plaintiff's did not merely "cut and paste" but instead conducted a thorough

investigation of the issues and facts particular to this action and made numerous adjustments to the Complaint as a result.

Defendants next claim that 28 hours of prospective time for the filing of this reply and "to attend the fairness hearing" is unreasonable. Opp. at 19. Defendants also claim that that the instant Reply should take little time as the parties have already briefed fees in Paz, and thus the "arguments and case law are already in [Plaintiff's counsel's] computer."

The time sought by Plaintiffs in this regard is entirely reasonable. As this Court and the class members should expect, this brief is a detailed rebuttal of the factual and legal arguments raised in opposition, not some slap-dash cut-and paste effort from any previous filing. Indeed, although the fee application budgeted only 8 hours for the Reply, because of the range of issues raised by Defendants, preparation of this brief and supporting declarations have taken in excess of 20 hours.

Nor is time going forward limited to "attending a fairness hearing". In addition to preparing for and attending the fairness hearing, and responding to any potential objectors from the 561 member class, the prospective time encompasses all post-judgment work, including responding to all inquiries from class members regarding the case, how to participate, etc.[8]

Defendants also claim that Plaintiff's use of "4 attorneys. . . by the Plaintiff. . . with a collective practice experience of ninety eight years is patently unreasonable." Opp. at 18. On a factual level, one attorney, (Daniel Schlanger, Esq., the undersigned) performed the vast majority of work in this case. Specifically, I have performed (or, in the case of prospective work not yet completed, am scheduled to perform) 89.2 of the 121.85 hours sought. Ms. Shollenberger and Mr. Fishman each have less than 11 hours in on the case, and Mr. Lane has 6.7 hours. There are also 4.4 hours of paralegal time. As reflected in the time records, each of these three other

---

[8] Defendants claim that the class "is so small that the undersigned can virtually guarantee this Court that there will be zero class members at the fairness hearing." Opp. at 19. This is patent nonsense. There are 561 class members.

attorneys made discrete contributions at distinct phases of the case. As the Court stated in Bleecker Charles Co. v. 350 Bleecker St. Apt. Corp., Defendants' attack "on the use of more than one lawyer to write and edit briefs, mistake professionalism that resulted in high-quality advocacy for duplicative effort. Having more than one attorney research and participate in drafting a brief is a common practice and therefore not necessarily 'duplicative'. Many tasks require or benefit from the attention of more than one attorney." 212 F. Supp. 2d 226, 230 (S.D.N.Y. 2002)(quotations omitted).[9]

### III.  PLAINTIFF WAS SUCCESSFUL

Defendants argue that Plaintiff's fees should be reduced "for not succeeding on all claims". Opp. at 20. Specifically, they claim that Plaintiff's counsel should be penalized for obtaining only "statutory damages" and what Defendants label "other incidental relief". Id. at 22.

Defendants again misstate both the law and facts. Regarding the former, contrary to Defendants' suggestions, the Supreme Court has barred reductions based on a plaintiff "not succeeding on all claims".  Rather, in determining a fully compensatory fee, the Supreme Court has instructed that "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit", observing that "[l]itigants in good faith may raise alternative legal grounds for a desired outcome,." Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)(emphasis added).[10]

---

[9] Defendants also claim that co-counsel for Plaintiff, James B. Fishman, Esq. should not be compensated because he, allegedly, filed his notice of appearance after the parties agreed to settle. Opp. at 7. This is factually incorrect. Mr. Fishman filed his Notice of Appearance on 3/21/13 (ECF # 16). The case settled at a conference, in which Mr. Fishman participated, held before Magistrate Azrack on 5/2/13.

[10] See also Mautner v. Hirsch, 831 F. Supp. 1058, 1074 (S.D.N.Y. 1993):
> We do not approve the deduction for work on legal theories that proved "unfruitful" but were not found to have been frivolous. Lawyers for plaintiffs and objectors in derivative and or class actions, no less than other litigators, must evaluate, accept and prosecute suits on the basis of the entire spectrum of theories that show early promise of vindicating their clients' rights. Every lawyer, indeed every judge, has pursued blind alleys that initially seemed reasonable or even professionally obligatory. To reward only the pursuit of a successful theory in cases such as this undercompensates the inevitable exploratory phases of litigation, and may also invite overly conservative tactics or even prohibit some high-risk but deserving actions entirely. (citing Seigal v. Merrick, 619 F.2d 160, 164-65 (2d Cir. 1980).

The Second Circuit has likewise held that it is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested. . . . a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." Leblanc-Sternberg v. Fletcher, 143 F.3d 748, 762 (2nd Cir. 1998)(citing Hensley, 461 U.S. 424)

The cases cited by Defendants point to the scenarios of truly limited success, radically different from the facts of this case, in which Courts have reduced fees for limited success. In Farrar v. Hobby, 506 U.S. 103, 116 (1992), plaintiff "filed a lawsuit demanding 17 million dollars from six defendants . . . he got one dollar from one defendant."(O'Connor, concurring). In Separ v. Nassau County Dep't of Soc. Servs., 327 F. Supp. 2d 187 (E.D.N.Y. 2004), Plaintiff had "originally pled several causes of action but failed to submit any material evidence in support of those causes of action [at trial]. The failure to present such evidence resulted in dismissal of those claims at the close of Plaintiff's case." Id. at 192. Even so, the Court awarded 60% of the fees requested. Id. at 192. In Pino v. Locascio, 101 F.3d 235 (2d Cir. N.Y. 1996), relied upon by Defendants, the plaintiff "prevailed on only one claim. . . . . Ms. Pino asked for $ 21 million and got only $ 1.00." Id. at 238.

In Husain v. Springer, cited by Defendants, the Court applied a 35% deduction for limited success in a first amendment case where Plaintiff suffered dismissal of 23 of 24 Defendants, achieved a change in conduct by Defendant during the pendency of the case "without an admission of liability" and recovered only nominal damages. 2013 U.S. Dist. LEXIS 37134, 24-26 (E.D.N.Y. Mar. 14, 2013)

Here, in contrast, Plaintiff recovered against all Defendants on its principal claim under the FDCPA. Moreover, notwithstanding Defendants statement to the contrary in its opposition

brief, Defendants themselves have elsewhere acknowledged that – in recovering $23,333.33 for the class – Plaintiff recovered monies in excess of the statutory damages cap. Specifically, although the settlement does not assign dollar amounts to different claims, the Notice to the Class – jointly drafted by the parties and incorporated into the settlement agreement – states:

> Class Counsel is satisfied, after examination of the certified financial statements of Rubin & Rothman, LLC that the firm's net worth as of 12/31/10 was approximately $2,500,000 (Two million five hundred dollars). ***Counsel for Defendants has represented that the net worth of the firm at the end of 2012 was significantly less. Based on this representation, it appears that the total damages being recovered are greater than 1% of the net worth of Rubin & Rothman, LLC.***

Proposed Class Notice ECF # 21-3 ("Notice") at 3 (emphasis added.)

Plaintiff also obtained contribution toward the settlement from individual Defendant Keith Rothman, Esq. despite the paucity of authority on whether his net worth could be aggregated with his firm's for purposes of determining the statutory damage cap, and despite the lack of clarity regarding the degree of his personal involvement in the misconduct alleged. Indeed, the Class Notice specifically states that "Because Defendants would have, absent a settlement, disputed Plaintiff's right to aggregate Defendant Keith Rothman's net worth with R&R's, the money that Rothman is contributing to the settlement fund may be the maximum possible recovery Plaintiff would have recovered as against Defendant Keith Rothman."

In addition, Plaintiff obtained additional funds in return for a (very) limited release of TD Auto Finance. Class Action Settlement Agreement, ECF # 21-1 at 11.

With regard to injunctive relief, Defendants themselves state that "the vast majority of federal courts have held that injunctive relief is not available under the FDCPA" rendering

absurd the contention that Plaintiff's should be penalized for not insisting on injunctive relief as a condition of settlement.[11]

Pursuant to the settlement, individual class members will receive anywhere from $37.13 to $1000 each, depending upon the class participation rate. Notice at 3-4.

Clearly, the Plaintiff did not suffer the kinds of severely compromised outcomes that Courts in this Circuit have found warranted reductions for limited success. Rather, the parties negotiated a settlement that provides the class with an excellent result, and is therefore entitled to its lodestar. Hensley, 461 U.S. at 437 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee").

### IV. PLAINTIFF'S COUNSEL'S BILLING RECORDS ARE NOT OVERLY VAGUE

Defendants claim that "the vagueness of the time records also supports a large across the board fee reduction." Defendants do not point to any particular time entry, and their argument should be rejected for this reason alone. See e.g. Stevens v. Aeonian Press, Inc., 2002 U.S. Dist. LEXIS 20189, *16-17 (S.D.N.Y. Oct. 22, 2002).

Moreover, Plaintiff's time records are not vague. ECF #25-1. The cases cited by Defendants to the contrary are inapposite. In Pressman v. Estate of Steinvorth, 886 F.Supp 365 (S.D.N.Y. 1995) (cited at Opp. at 24), a law firm submitted invoices that included multiple matters handled for one client. The Court found fault because it could not tell which tasks related to the case before the court on the fee motion as opposed to other cases being handled by counsel for that client.[12]

---

[11] Defendants indeed stated that they would only pay the above referenced $23,333.33 on condition that the settlement included dismissal of the Judiciary Law claim. Given that the claim springs back to life in the event that the Settlement is not approved, Plaintiff saw no harm in agreeing to this term, and no great consequence can be attributed to the claim's "dismissal" as part of the settlement. Indeed, all claims are ultimately dismissed with prejudice as a consequence of settlement.

[12] Pressman, 886 F.Supp at 367:

14 | Page

Other cases cited by Defendants stand merely for the proposition that a time entry that states "review cases", "research", "phone calls", etc. "without explanation of what counsel was reviewing or researching or who he was calling and why he was making the call." is problematic as it does not allow for sufficient judicial review. Husain v. Springer, 2013 U.S. Dist. LEXIS 37134, 26-30 (E.D.N.Y. Mar. 14, 2013); Vishipco Line v. Charles Schwab & Co., 2003 U.S. Dist. LEXIS 6820 (S.D.N.Y. Apr. 22, 2003).[13] There are no such entries in Plaintiff's time sheets. Not only are the entries themselves more descriptive, but it is always clear from the text of the time entry itself or the context (*e.g.*, the immediately preceding or following entries) what motion, letter or pleading the time entry refers to. Indeed, in the vast majority of cases regarding legal research, Plaintiff's time records indicate not just what motion or letter the research was related to, but also what legal issue was being researched.[14] Defendants cannot and do not point to any case where time records providing this level of detail have been held overly vague.

## CONCLUSION

For the reasons set forth herein and in Plaintiff's moving papers, Plaintiff's motion for attorney's fees and costs should be granted in its entirety.

*[signature block on separate page]*

---

Although the invoices generally break down the type of work performed by Pressman's counsel, stating, for example, "telephone conversation," "prepare correspondence," or "review of file," they often fail to state the legal matter that the activity concerned, for example the interpleader action or the accounting action. This information is crucial to the court's determination because Pressman may be reimbursed only for his counsel's work in commencing the interpleader action.

[13] Defendants also cite in error to Mautner v. Hirsch, 831 F. Supp 1058 (S.D.N.Y 10993). The quotes attributed to that case are not found therein. Nor was the undersigned able to find the alleged excerpt in any other case.

[14] There are a few instances where the exact legal topic has been redacted based on privilege/confidentiality, using brackets.

15 | Page

Respectfully

Daniel A. Schlanger, Esq.
Schlanger & Schlanger, LLP
9 East 40th Street, Suite 1300
New York, NY 10016
Ph: 914-946-1981, ext. 101
daniel.schlanger@schlangerlegal.com

James B. Fishman, Esq.
Fishman & Mallon, LLP
305 Broadway, Suite 900
New York, NY 10007
Ph: 212-897-5840
jfishman@fmlawoffices.net